995 A.2d 1013

**Jeffrey Edward ALLEN**

v.

**STATE of Maryland.**

No. 1935, Sept. Term, 2008.

Court of Special Appeals of Maryland.

May 27, 2010.

628

Allison Pierce Brasseaux (Elizabeth L. Julian, Acting Public Defender, on the brief), Baltimore, MD, for appellant.

Robert Taylor (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for appellee.

Panel: WOODWARD, MATRICCIANI and RAYMOND G. THIEME, JR. (Retired, Specially Assigned), JJ.

MATRICCIANI, J.

This case, which is before us for the second time, presents a narrow legal question and one of first impression in this State. At appellant's second trial, held in August 2008, Jeffrey Edward Allen, appellant, was convicted by a jury in the Circuit Court for Charles County of first-degree felony murder and sentenced to life imprisonment. Appellant raises four questions on appeal:

I. Did the trial court err when it: A) informed the venire of appellant's prior armed robbery conviction, and B) instructed the jury that because he had been previously convicted of the underlying felony, armed robbery, the jury need not decide that element in determining appellant's guilt or innocence on first-degree felony murder?

II. Did the trial court abuse its discretion when it allowed the State to introduce into evidence appellant's drug use the day before and the day of the murder?

III. Did the trial court err when it instructed the jury that appellant was "presumed not guilty" instead of "presumed innocent"?

IV. Did the trial court abuse its discretion when it allegedly allowed the State to make a "golden rule" argument during closing?

We answer the first question in the affirmative and so shall reverse appellant's conviction. Of the remaining questions, only the second one may arise again during re-trial. We answer that question in the negative.

## BACKGROUND AND PROCEDURAL HISTORY

In 2002, appellant was charged with several crimes relating to the stabbing death of John Butler. Among the many contested issues at the first trial was appellant's intent when he stabbed Butler: specifically, whether appellant had intended to kill Butler or whether he had acted in self-defense. After hearing the evidence presented by the parties, the jury

returned guilty verdicts on first-degree felony murder, second-degree murder, armed robbery, robbery, theft, and two counts of carrying a weapon openly with the intent to injure.[1]

On appeal, we vacated appellant's felony murder conviction because the trial court gave an erroneous jury instruction. *See Allen v. State,* 158 Md.App. 194, 857 A.2d 101 (2004). The trial court had instructed the jury that to convict appellant of the crime of felony murder based on robbery, the jury need not determine when the intent to commit the underlying felony had occurred—the intent could have been formed before, during, or after the murder. *Id.* at 237–47, 857 A.2d 101. We held that the instruction was in error because an "afterthought" robbery could not form the basis for a felony murder conviction. *Id.* at 246, 857 A.2d 101. Because we did not know whether the jury had found that appellant had formed the intent to steal Butler's car before or during the commission of the murder (in which case the conviction could stand) or after the murder (in which case the conviction could not stand), and because there was sufficient evidence presented at trial for the jury to base its conviction on any of those three situations, we vacated appellant's felony murder conviction and remanded to the circuit court. *Id.* at 246, 249–50, 857 A.2d 101. We affirmed his remaining convictions, specifically finding that there was sufficient evidence to support the underlying felony—the armed robbery of the car. Our mandate read: "FIRST DEGREE FELONY MURDER CONVICTION VACATED; ALL OTHER JUDGMENTS AFFIRMED; CASE REMANDED TO THE CIRCUIT COURT FOR CHARLES COUNTY FOR FURTHER PROCEEDINGS; COSTS TO BE PAID 50% BY APPELLANT, 50% BY CHARLES COUNTY." *Id.* at 251, 857 A.2d 101. Our decision was affirmed by the Court of Appeals on the same grounds. *See State v. Allen,* 387 Md. 389, 875 A.2d 724 (2005).

In August 2008, the State re-tried appellant on the felony murder charge. The State proceeded on the theory that

---

1. The jury acquitted appellant of first-degree murder.

appellant had formed the intent to steal the car prior to the killing, while the defense's theory was that stealing the car was an afterthought to the murder. Testifying for the State, among others, was Butler's friend who was in the car when Butler picked up appellant, several police officers who responded to the crime scene and spoke to appellant about the crime, and a person with whom appellant shared his prison cell after his arrest. Appellant, who testified at his first trial, did not testify at his second trial. Defense counsel introduced no testimonial evidence.

The cumulative evidence presented by the witnesses at appellant's second trial showed that on the evening of October 23, 2001, Butler and two of his friends drove to "the Stroll," a well-known area in the gay community where gay people meet other gay people. Butler parked his car. He remained seated and a few minutes later appellant walked up to the car. After a brief conversation, appellant got in the car. Butler drove his two friends to their home. He then drove to his home where he and appellant engaged in consensual sex. The next morning, appellant told Butler that he wanted to leave, but Butler made no effort to take him home. When Butler refused to take him home, appellant picked up Butler's car keys. He jingled them loudly at Butler and said that he was driving this "m-fucker" out of here. Butler approached appellant, and when he did, appellant grabbed a kitchen knife, stabbed Butler repeatedly, and then fled in Butler's car. Several miles from Butler's home, appellant lost control of the car and ran into a ditch. Appellant got out of his car and flagged down a passing motorist. The driver drove appellant to a store where he called the police. When the police arrived at the store, appellant, who was covered in blood, explained that he had stabbed someone. Appellant directed the police to Butler's home where Butler was found naked and dead lying next to a couch. The police also seized Butler's car. Appellant, who was taken to the police station, showed no signs of physical injury. Butler had almost two dozen stab wounds to his neck, chest, hands, and face.

The jury again convicted appellant of felony murder, and he was subsequently sentenced to life imprisonment.

## DISCUSSION

### I.

Appellant argues on appeal that the trial court erred when it: A) told the venire about his prior armed robbery conviction because it impermissibly introduced other crimes evidence which was unduly prejudicial and not probative, and B) instructed the jury that he had previously been convicted of armed robbery so the jury need not determine whether appellant had committed the underlying felony in deciding whether to convict appellant of felony murder. Appellant argues that the trial court's instruction collaterally estopped him from arguing an essential element of the crime of felony murder and therefore removed the issue from the jury's consideration.

The State initially argues that appellant has failed to preserve his arguments for our review because he raised different arguments below. The State argues that appellant's arguments, even if preserved, are meritless. The State argues that appellant was not entitled to re-litigate his armed robbery conviction at his second trial because the remand from his first appeal was a limited remand to determine only *when* the armed robbery occurred. Thus, the armed robbery conviction was the "law of the case" and not open to re-litigation.[2]

---

**2.** The "law of the case" doctrine is not applicable. That doctrine provides that "when [an] appellate court has rendered a decision and states in its opinion a rule of law necessary to decision, that rule is to be followed in all subsequent proceedings in the same action." BLACK'S LAW DICTIONARY 798 (5th ed. 1979) (emphasis added); *see also Haskins v. State,* 171 Md.App. 182, 908 A.2d 750 (2006). In the present case, the lower court correctly applied the law of the case, that to convict appellant of felony murder the jury must determine that he had formed the intent to commit the felony before or during the murder, not after the murder. The question appellant raises on appeal concerns whether the State may in a subsequent prosecution use a prior jury conviction as collateral estoppel and thereby prevent a defendant from contesting an

## A. Preservation.

■ At the beginning of appellant's second trial, the parties and the court discussed whether the jury should be told of appellant's previous convictions. Defense counsel asked the court to tell the venire that appellant had previously been convicted of second-degree murder [3] but not to tell them about the armed robbery conviction, arguing that it was not relevant. When the trial court stated that the jury would have to be informed at some point about the armed robbery conviction, given that the prior robbery conviction was the "law of the case," defense counsel rejected that characterization, again adding that the armed robbery conviction was not relevant. Defense counsel also stated during the bench discussion that the only issue before the jury was when the appellant had formed the intent to rob Butler. The State, in response, argued that it made no sense to tell the venire about the second-degree murder conviction but not the robbery conviction.

The trial court ultimately agreed with the State. When the venire was brought into the courtroom, the trial court said, among other things:

*Ladies and gentlemen, you—will hear evidence ... that the Defendant, Mr. Allen, was previously convicted for the offense of Second Degree Murder and Robbery in connection with the incident*—that is the subject of today's trial.

*That in part is why or primarily is the reason why the only matter before the jury in this case—before the Court in today's case or today's trial, will be the First Degree Murder trial—charge related to the robbery incident.*

The jury is going to be instructed to—consider the evidence that pertains to the First Degree Felony Murder Charge only. Is there any potential juror who feels you will

---

essential element of the crime charged. That issue was never raised or decided in the earlier appeal.

**3.** His apparent strategy was to make it easier for the jury to acquit appellant because he already stood convicted of second degree murder.

have difficulty—with the case because of the fact that you know in advance the Defendant has previously been convicted of offenses arising out of the incident?

(Emphasis added). One juror was excused for cause because he stated that he would have difficulty deciding the case knowing of the previous convictions. Subsequently, defense counsel moved for a mistrial, arguing that advising the venire of the prior armed robbery conviction "tainted the entire pool[.]" The trial court denied the motion.

Near the end of trial, during a discussion of the trial court's proposed jury instructions, defense counsel again told the court that it wanted the jury to know about the second-degree murder conviction so the jury would not have "an all or nothing verdict on the felony murder." As to the armed robbery conviction, defense counsel stated:

[DEFENSE COUNSEL] . . . Over my objection, the Court did instruct[ ] [the venire] on robbery as well, which I believe is in error because of the *Bowers*[4] case, and we did not want that to happen. I don't think we should further complicate the matter over our objection to tell this jury anything more about what happened on appeal. And, I believe the Court had indicated when he was talking to the juror who did have an issue words to the effect of that the law was changed and that's why it's back here. And, all of

---

4. In *State v. Bowers*, 349 Md. 710, 709 A.2d 1255 (1998), Bowers was convicted of reckless endangerment but the jury was unable to reach a verdict on involuntary manslaughter. The State elected to retry Bowers on that charge. At the second trial, defense counsel requested that the trial court submit the charge of reckless endangerment to the jury, arguing that reckless endangerment is a lesser included offense of involuntary manslaughter. The court denied the request and the jury convicted Bowers of involuntary manslaughter. Bowers appealed. The Court of Appeals affirmed. The Court recognized that in some instances a defendant is entitled to a lesser included offense jury instruction but under the circumstances presented in that case Bowers was asking the Court "to create a 'legal fiction' and to institute the practice of presenting meaningless charges to a jury. Permitting a jury to return a verdict which is a nullity is contrary to the public interest and the sound administration of justice." *Bowers*, 349 Md. at 729–30, 709 A.2d 1255.

that language, which I think is not necessary for this jury to know and would prejudice my client.

. . .

THE COURT: Well, my . . . I think it necessary for the jury dealing with the case in this kind of posture to know what robbery is. If it is their task . . . to determine whether this homicide occurred in furtherance of a robbery, or whether the State can prove that or not, that's their role, we need to define a few terms and robbery is one of the terms we have to define.

When the court stated that the jury needed to have a definition of armed robbery to decide the case, defense counsel agreed. Defense counsel disagreed, however, with telling the jury about the prior armed robbery conviction. When the court insisted that it tell the jury about the previous armed robbery conviction, defense counsel stated: "What they are going to do is exactly what *Bowers* says, which is just throw up their hands and say RDW before or after, who cares? RDW . . . the conviction is in place, who cares? Which denies him the right of a fair trial." Additionally, defense counsel objected to giving Md.Crim. Pattern Jury–Instruction 4:17.7.1 on felony murder, stating:

*It goes hand in hand with my thought that this is a little bit different in that when the case came down we've had an abundance of conversation on the fact that I believe we actually should have been entitled to go forward with a trial on robbery with a deadly weapon. The Court disagreed, and I understand that.*

(Emphasis added).

After hearing both parties' arguments, the trial court instructed the jury:

*I'm going to tell you also, over at least one party's objection, the Defendant here stands convicted of the underlying robbery.* The only . . . and it is . . . as I tried to emphasize in that first degree felony murder instruction, someone can be convicted of murder . . . somebody can be convicted . . . second degree . . . can be convicted of rob-

bery or robbery with a deadly weapon, both charges arising out of the same event, but it would not amount to first degree felony murder if the fatal act occurred before the intent to do the robbery arose.

If, in other words, the robbery, design or plan or decision came as an afterthought following the infliction of the fatal wound, it's not first degree felony murder. Okay.

The question of whether Mr. Allen committed second degree murder is not before you. *The question of whether he committed robbery or robbery with a deadly weapon is not before you.* The only question before you is whether the sequence of events and the interrelationship of the events amounted to first degree felony murder as I just described it.

(Emphasis added).

The State argues on appeal that appellant's objection below was that the trial court should not have instructed the jury of his prior robbery conviction because the prior conviction was not relevant, whereas on appeal, appellant argues that the trial court should not have instructed the jury about his prior robbery conviction because it removed a critical element of the crime of felony murder from the jury's consideration. The State argues that because the two arguments are different, appellant's argument on appeal is not preserved for our review. *See* Md. Rule 8–131(a) ("Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court[.]"); *see also Klauenberg v. State,* 355 Md. 528, 541, 735 A.2d 1061 (1999) ("It is well-settled that when specific grounds are given at trial for an objection, the party objecting will be held to those grounds and ordinarily waives any grounds not specified that are later raised on appeal.") (citations omitted).

We disagree. Prior to *voir dire* and prior to the trial court's jury instructions, appellant objected to the court's informing the jury about his prior armed robbery conviction. He clearly stated that the prior conviction was not relevant. Additionally, while appellant did not specially use the term

"collateral estoppel" or "directed verdict" during his argument in support of his objections, appellant adequately conveyed to the trial court that he wanted the State to prove each element of felony murder, including the underlying felony. Although appellant made additional arguments which were contrary to that argument, *i.e.*, that the only issue to be decided by the jury was when the armed robbery occurred, not whether it occurred, we see that as no more than offering alternative theories to support a targeted outcome, an acquittal. Although a closer call than in some cases, we are satisfied that appellant has preserved his argument for our review.

### B. Can the State Use Collateral Estoppel Offensively Against a Criminal Defendant to Stop Him from Challenging an Element of the Crime Charged?

Appellant argues that the trial court erred when it instructed the jury that it need not determine whether the State had proven the armed robbery, the underlying felony, to convict him of first-degree felony murder. Appellant argues that the ruling collaterally estopped him from challenging an element of a crime of felony murder and deprived him of his right to a fair trial. We agree.

Collateral estoppel is an admittedly "awkward" phrase but "stands for an extremely important principle in our adversary system of justice." *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). "Collateral estoppel" means "simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id.* The rule is a constitutional guarantee derived from the Fifth Amendment Double Jeopardy Clause which forbids any person from being "twice put in jeopardy of life or limb[.]" *Id.* at 446, 90 S.Ct. 1189. The prohibition against making a defendant twice accountable for the same offense is applicable to the States through the Fourteenth Amendment. *State v. Long,* 405 Md. 527, 535–36, 954 A.2d 1083 (2008) (citing *Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969)). "Despite the fact that the

Maryland Constitution lacks an explicit double jeopardy clause, Maryland common law provides well-established protections for individuals against being twice put in jeopardy." *Id.*

The doctrine of collateral estoppel was originally developed for use in civil litigation. *Ashe,* 397 U.S. at 443, 90 S.Ct. 1189. The doctrine has two sub-types. These are known by the terms defensive collateral estoppel and offensive collateral estoppel. The Supreme Court in *Ashe* held that a defendant in a criminal case may assert defensive collateral estoppel by relying on an acquittal in a first prosecution to bar litigation of those facts in a later prosecution for a different offense. *Id.* In reaching that holding, the *Ashe* Court cautioned that the "rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality." *Id.* at 444, 90 S.Ct. 1189. Thus, collateral estoppel in the criminal context is not to be applied inflexibly but with an eye toward balancing the goal of avoiding repetitious litigation with the right to a fair adversary proceeding in which a party may fully present his case. *Accord Partmar Corp. v. Paramount Pictures Theatres Corp.,* 347 U.S. 89, 91, 74 S.Ct. 414, 98 L.Ed. 532 (1954) (one of the policy considerations of collateral estoppel is to "avoid[ ] repetitious litigation.").

Although the *Ashe* Court held that the defensive use of collateral estoppel by a defendant may be appropriate in certain circumstances, the Supreme Court has not ruled whether the offensive use of collateral estoppel by the prosecution in a criminal case is appropriate. It has suggested, however, that it is not. *See United States v. Dixon,* 509 U.S. 688, 710 n. 15, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993) (J. Scalia, writing the majority opinion for four justices, stated in dicta that "[u]nder *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), an acquittal in the first prosecution might well bar litigation of certain facts essential to the second one—though a conviction in the first prosecution would not excuse the Government from proving the same facts the

second time.") (some citations omitted); *Simpson v. Florida,* 403 U.S. 384, 386, 91 S.Ct. 1801, 29 L.Ed.2d 549 (1971) (per curiam) (noting that where the State had obtained a robbery conviction for one person, it could not have demanded in a trial for robbery of a second person that arose out of the same transaction that "the trial judge [ ] instruct[ ] the jury that, as a matter of law, petitioner was one of the armed robbers in the store that night.").

Although the Supreme Court has not ruled on the offensive use of collateral estoppel by the prosecution, several federal and state courts have, most ruling that the offensive use of collateral estoppel in the criminal context is not appropriate. In *United States v. Pelullo,* 14 F.3d 881 (3d Cir.1994), a jury convicted Pelullo of 49 counts of wire fraud and one count of racketeering under the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1961–1968 (RICO). On appeal, the Third Circuit affirmed one of the wire fraud counts, Count 54, which constituted one of the RICO predicate acts. The Third Circuit, however, reversed all the other convictions based largely on the erroneous admission of certain bank records. On re-trial, the court admitted into evidence the prior wire fraud conviction, Count 54. Additionally, the trial court instructed the jury that "as a matter of law" the defendant had committed the wire fraud offense so the jury did not "have to consider whether the government had proved this offense" in determining whether he had committed the RICO offense. *Pelullo,* 14 F.3d at 888. A jury convicted Pelullo on the remaining 48 counts of wire fraud and the one RICO count. Pelullo appealed, arguing that the trial court had erred when it had admitted into evidence the prior conviction, Count 54, and when, in its jury instructions, it applied the prior conviction against him as a matter of law as an element of the RICO offense. *Id.* at 888–89. The Third Circuit agreed and reversed.

In reaching its holding, the *Pelullo* Court analyzed the language in both the Sixth and Seventh amendment. The Sixth Amendment provides:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

The Court found the "*all* criminal prosecutions" language to be significant, stating that it "serves to guarantee a right that is absolute in the sense that it applies to all criminal prosecutions or, put differently, to the prosecution of every crime." *Id.* at 895. The Court also held that "[t]he language of the Sixth Amendment does not admit of any indication that the absolute right to a jury trial in criminal cases can be modified by reasons of efficiency or public policy arguments." *Id.* The *Pelullo* Court explained that its reading of the Sixth Amendment

comports with and is supported by the uniformly accepted notion that in criminal cases there is no mechanism available to the government comparable to making a motion for directed verdict or summary judgment in civil cases. Indeed, no matter how strong and even overwhelming the evidence is, and although a judge can grant a judgment of acquittal in favor of the defendant before or even after the jury renders its verdict, *see* Fed.R.Crim.P. 29, a criminal defendant in federal courts can be convicted only by the verdict of the jury.

*Id.*

The Court then contrasted the language in the Sixth Amendment with the language in the Seventh Amendment, which provides:

In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.

The Court noted that the Seventh Amendment maintains that the right to trial in the civil context is only "preserved" to the extent it existed when the Amendment was ratified in 1791. *Id.* at 895. The Court noted that while the use of collateral estoppel was sanctioned in civil cases when the amendments were adopted, it did not exist in the context of criminal cases. *Id.* at 896.

The *Pelullo* Court also found support in the well-reasoned state court decision of *State v. Ingenito*, 87 N.J. 204, 432 A.2d 912 (1981). In that case, the defendant was charged with possession of a firearm by a convicted felon. At trial, the State sought to admit into evidence Ingenito's prior conviction for illegal transfer of weapons, which was based on conduct that arose out of the same transaction as the felon-in-possession charge. Ingenito objected, arguing that evidence of the prior conviction worked an estoppel on the possession issue. The court admitted evidence of the prior conviction and Ingenito appealed, raising the argument that he raised below.

The New Jersey Supreme Court agreed with Ingenito that use of the prior conviction constituted collateral estoppel against him, infringed upon his constitutional right to a jury trial and violated his right to be presumed innocent. *Ingenito*, 432 A.2d at 915. In reaching that holding, the *Ingenito* Court focused on a jury's duty in a criminal case, noting:

> The application of collateral estoppel against a defendant constitutes an invasion of the fact finding and ultimate decisional functions of the jury. If an essential element of a case is presented as concluded or settled, effectively withholding from the jury crucial underlying facts, the jury's capacity to discharge fully its paramount deliberative and decisional responsibilities is irretrievably compromised. It follows in such circumstances that the defendant's jury right will have been, commensurately, abridged.

*Id.* at 916. The court added:

> [C]ollateral estoppel, applied affirmatively against a defendant in a criminal prosecution, violates the right to trial by jury in that not only does it seriously hobble the jury in its

quest for truth by removing significant facts from the deliberative process, but it constitutes a strong, perhaps irresistible, gravitational pull towards [sic] a guilty verdict, which is utterly inconsistent with the requirement that a jury remain free and untrammeled in its deliberations. Hence, the collateral estoppel doctrine, which serves to establish virtually conclusive evidence of a critical element of criminal guilt, cripples the jury in the discharge of its essential responsibilities contrary to the constitutional guarantees of the jury right in a criminal trial.

*Id.* at 918–19 (footnote omitted). The *Ingenito* Court noted that in a criminal case the " 'question is not whether guilt may be spelt out of a record but whether guilt has been found by a jury.' " *Id.* at 916 (quoting *Bollenbach v. United States,* 326 U.S. 607, 614, 66 S.Ct. 402, 90 L.Ed. 350 (1946)).

Although the *Pelullo* Court concluded that the lower court had erred in its instructions to the jury, it nonetheless held that evidence of a defendant's prior conviction may be admissible as evidence of an element of the charged offense, if the trial court determines that its probative value is not substantially outweighed by the risk of unfair prejudice. *Id.* at 888. The *Pelullo* Court reasoned:

Admitting a judgment of conviction into evidence as one of the many pieces of evidence to prove a case is very different from according a judgment collateral estoppel effect. As an ordinary piece of evidence, a judgment is subject to evaluation by the fact finder, who can accept or reject such evidence as it deems appropriate. On the other hand, as collateral estoppel a judgment will have the effect of establishing as a matter of law facts determined in the prior proceeding and necessary to the judgment. The fact finder in the second proceeding must take the judgment at its face value.

*Id.* The Court stated that on remand the lower court "should conduct a balancing analysis [under Fed.R.Evid. 403], and state its reason in the record for admitting or excluding the judgment of conviction." *Id.* at 889.

We are persuaded by two other state supreme court cases with facts similar to those in the instant case. Those cases concluded that the use of collateral estoppel by the prosecution against the defendant to establish an essential element of the charged offense violated the defendant's right to trial by jury. In *State v. Scarbrough*, 181 S.W.3d 650 (Tenn.2005), the defendant was convicted of, among other things, felony murder and aggravated burglary. The felony murder conviction was reversed on appeal and he was retried. The State filed a pre-trial motion arguing that collateral estoppel prohibited the defendant from asserting that he did not commit the offense of aggravated burglary. The trial court agreed and granted the interlocutory appeal requested by the defendant. On appeal, the Tennessee Supreme Court held, as in *Pelullo*, that the use of collateral estoppel by the State against the defendant to establish an essential element of the charged offense violates the right to a jury trial. *Scarbrough*, 181 S.W.3d at 652. As in *Pelullo*, however, the Tennessee Supreme Court also concluded that the State could introduce the prior underlying felony conviction in a retrial on a charge of felony murder "if the trial court determines that its probative value is not substantially outweighed by the risk of unfair prejudice to the defendant." *Id.* The *Scarbrough* Court stated that this approach "strikes an appropriate balance between the interests of both the State and the defendant." *Id.* at 660.

In *State v. Goss*, 446 Mich. 587, 521 N.W.2d 312 (1994), the defendant was convicted of armed robbery and first-degree felony murder. On appeal, the Court affirmed the former but reversed the latter on the ground that the instructions to the jury omitted the intent requirement for aiding and abetting. On re-trial for felony murder, the State moved *in limine* to: (1) bar the defendant from re-litigating the underlying charge of armed robbery, and (2) have the court instruct the jury that Goss had been found guilty of armed robbery and therefore their only responsibility was to determine whether Goss was guilty of aiding and abetting the murder that occurred during the commission of the armed robbery. The court denied the

motion and the State was granted leave to appeal. The Michigan Supreme Court affirmed.

In support of its holding, the *Goss* Court explained that, in the criminal context, the right of a person accused of a felony "to trial by a jury and to due process of law includes the right to" determine whether the State "has proven beyond a reasonable doubt *every* element of the charge"—a judge may not direct a verdict in whole or in part. *Goss*, 521 N.W.2d at 315 (emphasis in original) (footnotes omitted) (citing *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) ("Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.") and *Sullivan v. Louisiana*, 508 U.S. 275, 277, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) ("although a judge [in a criminal case] may direct a verdict for the defendant if the evidence is legally insufficient to establish guilt, he may not direct a verdict for the State, no matter how overwhelming the evidence.")). The *Goss* Court found further support for its holding in the reasoning of *Pelullo, supra,* and *Ingenito, supra.*

Although the vast majority of cases that have faced this issue have sided with *Pelullo, Ingenito, Scarbrough,* and *Goss, see United States v. Gallardo–Mendez,* 150 F.3d 1240, 1244 (10th Cir.1998); *United States v. Harnage,* 976 F.2d 633, 633 (11th Cir.1992); *State v. Johnson,* 134 N.H. 498, 594 A.2d 1288 (1991); *State v. Stiefel,* 256 So.2d 581, 585 (Fla.App.1972) (in dicta), several courts have gone the other way and have permitted the offensive use of collateral estoppel by the State.

Those cases often fall into the category of "status" cases. In those cases, a defendant was charged with illegally entering the country and estopped from contesting his alienage where that issue had been previously decided adversely to him. *See Hernandez–Uribe v. United States,* 515 F.2d 20, 21 (8th Cir.1975); *Pena–Cabanillas v. United States,* 394 F.2d 785, 786 (9th Cir.1968); and *United States v. Rangel–Perez,* 179

F.Supp. 619, 625 (S.D.Cal.1959). The principal rationale for allowing the offensive use of collateral estoppel in those cases is judicial economy because those cases concern violations that are often recurring and result in repeated retrials at great expense and burden to the United States government. In *Rangel–Perez*, the District Circuit said, 179 F.Supp. at 626:

If the issue of alienage were to be tried each time a defendant makes an entry into the United States, after once having been found by judicial determination to be an alien, there would be less to deter future entries than at the present. Even though the present risk of prosecution for illegal entry would remain under 8 U.S.C.A. § 1326, a defendant would have an added incentive to enter again and again, knowing that a trial de novo on the issue of alienage would be forthcoming and that such trial might, on one occasion, result in a favorable verdict. The Government would be estopped by any unfavorable verdict, and accomplishment of the objectives of the immigration laws to discourage and effectively control the already difficult problem of illegal entries into this country would thus be weakened. The Government should not be put to the expense and burden of proving the issue of alienage after one judicial determination has been made, each time an alien decides to reenter this country illegally.

*Rangel–Perez*, 179 F.Supp. at 626.

The status cases have been routinely criticized and limited to their peculiar facts. Where there is little to no risk of costly repeated trials, courts have declined to apply the alienage cases as authority for applying collateral estoppel offensively against a criminal defendant. *See Pelullo*, 14 F.3d at 891 (stating that those courts that have permitted the application of collateral estoppel against the accused have subordinated "the defendant's constitutionally guaranteed right to a jury trial to concerns for efficient judicial administration and judicial perceptions of expeditious public police."); *Harnage*, 976 F.2d at 636 (rejecting arguments that judicial efficiency and economy requires the use of collateral estoppel against criminal defendants). Moreover, the Ninth Circuit has since gone

the other way in alienage cases. *See United States v. Smith–Baltiher*, 424 F.3d 913, 920 (9th Cir.2005) (State cannot collaterally estop a defendant from challenging his alienage status based on previous guilty pleas in which he was found to be not a United States citizen but an alien); *United States v. Bejar–Matrecios*, 618 F.2d 81, 84 (9th Cir.1980) (holding that introduction of a prior judgment for illegal entry was too prejudicial to admit in a subsequent trial for reentry into the United State after a prior deportation). The *Smith–Baltiher* and *Bejar–Matrecios* decisions severely undercut the viability of the *Hernandez–Uribe* decision, which relied heavily on the earlier Ninth Circuit position.

The only case we found that has sanctioned the offensive use of collateral estoppel in a criminal non-alienage case is *People v. Ford*, 65 Cal.2d 41, 52 Cal.Rptr. 228, 416 P.2d 132 (1966). In that case, the California Supreme Court held that on retrial for felony murder it was permissible to instruct the jury that the defendant had been convicted of the underlying felonies and that the jury need only determine whether the underlying felonies were committed during the homicide. *Ford*, 52 Cal.Rptr. 228, 416 P.2d at 137–38. In *Gutierrez v. Superior Court*, 24 Cal.App.4th 153, 29 Cal.Rptr.2d 376, 385–86 (1994), the California Court of Appeals questioned the viability of the *Ford* holding noting that: (1) *Ford* did not raise a constitutional claim, and (2) *Ford* was decided before *Ashe* and *Simpson* in which the United States Supreme Court questioned the ability of the State to invoke collateral estoppel against a criminal defendant. *Accord United States v. Arnett*, 353 F.3d 765 (9th Cir.2003) (the United States recognized that in federal criminal trials it may not use collateral estoppel to establish, as a matter of law, an element of an offense or to conclusively rebut an affirmative defense on which the Government bears the burden of proof beyond a reasonable doubt).

We agree with the federal and state decisions that have rejected the prosecution's use of offensive collateral estoppel to establish an essential element of a charged offense in a criminal case. This is consistent with the right of a criminally accused person to trial by an impartial jury, as

guaranteed by the Sixth Amendment of the United States Constitution, and the presumption of innocence, as implicated in the Due Process Clause of the Fifth Amendment. Judicial economy, the principal rationale of the alienage cases, to the extent those cases are still viable, does not apply in the instant case because we are not concerned with that type of recurring violation.

We do not find our holding contrary to that in *Cook v. State*, 281 Md. 665, 381 A.2d 671 (1978). In that case, the defendant was charged with crimes resulting from two armed robberies. During trial, the court granted the defendant's motion for a mistrial after ruling that the police officers illegally entered the defendant's apartment and that the weapons seized in the apartment should be suppressed. A few months after his first trial, the defendant was tried for another armed robbery. At the later trial, the defendant sought to prevent the State from introducing evidence of the guns which the court in the earlier case had ordered suppressed. The defendant argued that the evidence should be suppressed on the theory that the State was collaterally estopped from re-litigating the legality of the search. The trial court rejected the defendant's argument, denied the defendant's motion to suppress, and found him guilty of armed robbery. The Court of Appeals affirmed on appeal. The Court ruled that collateral estoppel did not apply in the facts before it because "the question of the admissibility of the weapons seized in the raid on [the defendant's] apartment was not finally adjudicated at [the defendant's] initial trial." *Id.* at 670, 381 A.2d 671. The Court stated that "it is widely agreed that exclusionary orders resemble mere evidentiary rulings, interlocutory in nature and hence are intrinsically non-final." *Id.* (citations omitted). Because the defendant's first trial ended in a mistrial, which is clearly not a final determination, there was no final judgment. *Id.* at 670–71, 381 A.2d 671.

Our opinion is in accord with *Cook*. First, there was no final determination in *Cook* so collateral estoppel was not applicable. Second, the application of collateral estoppel in *Cook* was in the context of a suppression issue which does not bear

directly on the determination of the defendant's guilt or innocence. *Accord People v. Page*, 155 Ill.2d 232, 185 Ill.Dec. 475, 614 N.E.2d 1160, 1167 (1993) (holding that defendant is barred from contesting findings in an earlier suppression hearing because, unlike *Pelullo*, application of the doctrine in a suppression hearing case "would not strip the defendant of his presumption of innocence or deny him his right to try an issue to a jury: the voluntariness of a confession is to be determined by the trial judge alone, and not by a jury[.]") (citation omitted).

 In sum, we hold that the trial court erred when it instructed the jury that they were to accept as a fact that the underlying felony had been previously proven, in determining whether appellant was guilty of felony murder. For the reasons set forth in *Pelullo, supra,* and *Scarbrough, supra,* we also hold that evidence of appellant's prior conviction may be admissible as evidence of the felony murder charge, if the trial court determines that the probative value of the prior conviction is not substantially outweighed by the risk of unfair prejudice. *See also State v. Johnson,* 134 N.H. 498, 594 A.2d 1288, 1292 (1991) (holding that the State cannot bar a defendant from challenging an essential element of his conviction, adopting a balancing approach to the admission of the prior conviction; yet recognizing that admission would be rare because "policy considerations generally weigh in the defendant's favor."); *but see Ingenito*, 432 A.2d at 920–22 (holding that evidence of prior conviction is not admissible because it is not merely evidential in character but amounts to de facto collateral estoppel). Additionally, we hold that the trial court erred in informing the venire about appellant's prior armed robbery conviction. The State never introduced appellant's prior armed robbery conviction into evidence, and the trial court's statement to the venire amounted to putting the proverbial cart before the horse.

## II.

 Appellant argues that the trial court abused its discretion when it allowed the State to introduce into evidence his

drug use the day before and the day of the murder. Appellant argues that the evidence was inadmissible other crimes evidence and was irrelevant and unduly prejudicial. The State argues that appellant has waived this argument under the law of the case doctrine. Even if not waived, the State argues that the trial court did not abuse its discretion in admitting the evidence. We agree with the State on both counts.

The "law of the case" doctrine is one of appellate procedure. We have held:

> Under the doctrine, once an appellate court rules upon a question presented on appeal, litigants and lower courts become bound by the ruling, which is considered to be the law of the case. . . . Not only are lower courts bound by the law of the case, but "[d]ecisions rendered by a prior appellate panel will generally govern the second appeal" at the same appellate level as well, unless the previous decision is incorrect because it is out of keeping with controlling principles announced by a higher court and following the decision would result in manifest injustice.

*Haskins v. State,* 171 Md.App. 182, 189–90, 908 A.2d 750 (2006) (quoting *Scott v. State,* 379 Md. 170, 183–84, 840 A.2d 715 (2004)) (citations omitted).

 "In Maryland, the law of the case doctrine prevents the revisiting of not only an issue that has been properly raised on appeal but also a question that *could* have been raised and argued in that appeal on the then state of the record." *Id.* at 190, 908 A.2d 750 (quotation marks and citation omitted) (emphasis in *Haskins* ). The Court of Appeals has explained:

> It is the well-established law of this state that litigants cannot try their cases piecemeal. They cannot prosecute successive appeals in a case that raises the same questions that have been previously decided by this Court in a former appeal of that same case; *and, furthermore, they cannot, on the subsequent appeal of the same case raise any question that could have been presented in the previous appeal on*

*the then state of the record, as it existed in the court of original jurisdiction.* If this were not so, any party to a suit could institute as many successive appeals as the fiction of his imagination could produce new reasons to assign as to why his side of the case should prevail, and the litigation would never terminate.

*Id.* at 190, 908 A.2d 750 (quoting *Fid.-Baltimore Nat. Bank & Trust Co. v. John Hancock Mut. Life Ins. Co.,* 217 Md. 367, 371–72, 142 A.2d 796 (1958)) (emphasis added).

At appellant's first trial, the State introduced into evidence his statements to the police regarding the fatal stabbing death of Butler. Appellant told the police in those statements that on the night of the murder he had not consumed any narcotics and had "two sips" of alcohol at Butler's home. At trial, appellant admitted to consuming alcohol and to consuming illegal substances (a marijuana joint laced with cocaine and three cigarettes dipped in PCP) a few hours before meeting Butler. Appellant was subsequently convicted of second-degree murder and other crimes. He appealed. He never argued in his appeal that the trial court had erred in admitting the evidence of his alcohol and drug consumption.

At appellant's second trial, appellant did not testify but the State sought to introduce portions of his police statements as related above and his trial testimony in which he admitted to drinking and consuming illegal substances a few hours before meeting Butler. Appellant objected. The trial court overruled the objections and admitted the evidence.

Appellant's credibility, and the reliability of his statements as to the events surrounding the stabbing death of Butler, were important issues at both of his trials. Appellant could have raised the issue as to the admissibility of his alcohol and drug use in his first appeal but did not. Accordingly, under the law of the case doctrine he has waived his right to raise that issue in this second appeal. Even if the issue were preserved, however, we would find it without merit.

"Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence

to the determination of the action more or less probable than it would be without the evidence." Md. Rule 5–401; *accord Snyder v. State*, 361 Md. 580, 591, 762 A.2d 125 (2000). In addition, evidence, even if relevant, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Md. Rule 5–403. "[T]he admission of evidence is committed to the considerable discretion of the trial court." *Sifrit v. State*, 383 Md. 116, 128, 857 A.2d 88 (2004) (citing *Merzbacher v. State*, 346 Md. 391, 405, 697 A.2d 432 (1997)). "The discretion necessarily entrusted to the umpire on the field embraces, by definition, a range of rational decisions. Within that range a trial judge may freely rule in either direction without fear of being overturned." *Tate v. State*, 176 Md.App. 365, 408, 933 A.2d 447 (2007), *vacated on other grounds*, 405 Md. 106, 950 A.2d 100 (2008).

Md. Rule 5–404(b) provides:

(b) **Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, or absence of mistake or accident.

The reasons for the general inadmissibility of other crimes, wrongs, or bad acts as substantive evidence is "because a jury could decide to convict on the basis of an alleged disposition and might infer that because the defendant had acted badly in the past that he is more likely to have committed the crime charged." *State v. Westpoint*, 404 Md. 455, 488, 947 A.2d 519 (2008) (citations omitted). There are exceptions when the evidence has "special relevance" to some contested issue and is not offered simply to prove criminal character. *Id.* Those exceptions include those listed in Rule 5–404(b), but that list is not exhaustive. *See Solomon v. State*, 101 Md.App. 331, 354, 646 A.2d 1064 (1994), *cert. denied*, 337 Md. 90, 651 A.2d 855 (1995).

The issue at appellant's second trial was whether appellant had formed the intent to steal Butler's car before, during, or after he fatally stabbed Butler. Certainly, appellant's perception of the events, his ability to recall the events, and the reliability of his testimony and statements regarding the events were all critical to the issue before the jury. Appellant was the sole and key witness to most of the events surrounding the murder. Accordingly, even if preserved for our review, we would find appellant's argument without merit. *Cf. Matthews v. State,* 68 Md.App. 282, 289, 511 A.2d 548 ("It is axiomatic that evidence of a witness's intoxication at the time of the event about which he is testifying is admissible for the purpose of impeaching his credibility" for "[i]t is common knowledge that the quantity of alcohol and/or drugs consumed will affect one's ability to see, to hear, and, generally, to perceive what is occurring.") (some quotations marks and citation omitted), *cert. denied,* 308 Md. 238, 517 A.2d 1121 (1986). Thus, we perceive no abuse of discretion here.

**JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR A NEW TRIAL.**

**COSTS TO BE PAID BY CHARLES COUNTY.**