Francisco **PENA–CABANILLAS,**
Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 21976.

United States Court of Appeals
Ninth Circuit.

April 24, 1968.

William T. Richert (argued), Fresno, Cal., for appellant.

Richard V. Boulger (argued), Asst. U. S. Atty., Fresno, Cal., John P. Hyland, U. S. Atty., Rothwell B. Mason, Asst. U. S. Atty., Sacramento, Cal., for appellee.

Before MERRILL and CARTER, Circuit Judges, and BYRNE,* District Judge.

JAMES M. CARTER, Circuit Judge.

This is an appeal from a judgment of conviction by a jury for the offense of illegal entry into the United States by an alien after he had been deported, pursuant to Title 8, U.S.C. Section 1326.

Two questions are presented:

1. Whether or not a judgment in a prior criminal case, in which it was determined that appellant was an alien, precludes appellant from litigating this fact in the case at bar.

2. Whether the trial court committed error in refusing to admit appellant's purported birth certificate on the issue of his intent.

The indictment charged that appellant was an alien, and that he was found in Fresno County, California, after previous deportation from the United States, and after he willingly and knowingly reentered the United States without consent of the Attorney General.

The District court took judicial notice of appellant's 1964 conviction in the District court, for violation of Title 18, U.S.C. Section 911, falsely and willfully representing himself to be a citizen of the United States. Since the issue of citizenship was the same at both trials, the District court held that the implicit determination in the 1964 conviction that appellant was an alien conclusively bound him, to-wit, it was conclusively presumed that he was an alien up to and including the date of the prior conviction in 1964. The court ruled appellant might introduce evidence that he had become a citizen after the first conviction.

### Collateral Estoppel

The conclusiveness of a fact which has been competently adjudicated by a criminal trial is not confined to such matter only as is sufficient to support a plea of double jeopardy. A prior judgment on fully litigated issues between the same parties has been held to be conclusive as to all that the judgment determined. The doctrine involved is one of collateral estoppel.

The doctrine of collateral estoppel is an aspect of the broader principle of res judicata, United States v. Marakar, 300 F.2d 513 (3 Cir. 1962), vacated on other grounds 370 U.S. 723, 82 S.Ct. 1573, 8 L.Ed.2d 803 (1962), and a common statement of the doctrine is that where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action. Hoag v. State of New Jersey, 356 U.S. 464, 470, 78 S.Ct. 829, 2 L.Ed.2d 913 (1958); See also 9 A.L.R.3d 214.

While expressed in varying language, the rule is that the doctrine of collateral estoppel, as applied in criminal cases, precludes the relitigation of issues determined by a former verdict and judgment, to-wit, those issues actually decided and those necessarily involved in the result. Sealfon v. United States, 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180 (1948); Hernandez v. United States, 370 F.2d 171 (9 Cir. 1966); Wheatley v.

* Honorable William M. Byrne, Senior District Judge, Central District of California, Los Angeles, sitting by designation.

United States, 286 F.2d 519 (10 Cir. 1961); Adams v. United States, 287 F.2d 701 (5 Cir. 1961); United States v. Kaadt, 171 F.2d 600 (7 Cir. 1948).

The reported criminal cases in which the doctrine of collateral estoppel has been applied are largely those in which the doctrine has been invoked for the benefit of the defendant, by way of a defense. 9 A.L.R.3d 241; See also United States v. Rangel-Perez, 179 F.Supp. 619 (D.C.Cal.1959).

In two cases the Ninth Circuit has reviewed a related problem but has not gone as far at the *Rangel* case, supra. Mills v. United States, 9 Cir., 273 F. 625 (1921), and Farrell v. United States, 381 F.2d 368 (1967); cert. den. 389 U.S. 963, 88 S.Ct. 349, 19 L.Ed.2d 377, both held that once status as an alien has been established it is presumed to be conclusive until the contrary is shown.

The question this court must now determine is whether a judgment in a criminal case may operate as collateral estoppel against the defendant.

The *Rangel-Perez* decision, supra, involved the issue of nationality status of the defendant. The court held that since the defendant's alienage had been fully litigated at the former trial and determined adversely to him, the government, in the subsequent trial, could invoke the doctrine of collateral estoppel against defendant and thereby establish his nationality status as that of an alien up to the date of the first conviction. In a well written opinion, the court pointed out that the question is closely connected with the question whether the doctrine is to be applied with the same mutuality in criminal cases as it is in civil cases, to-wit, in favor of and against both the plaintiff and defendant. The court

stated that wise public policy and common sense judicial administration combine to advocate the application of the doctrine against a defendant in criminal cases as to those issues which have in fact been litigated and adjudicated in a prior criminal case between the same prosecutor and the same defendant. United States v. Rangel-Perez, supra, 179 F. Supp. at 625.

The *Rangel-Perez* case is factually identical to the case on appeal. In both cases, the issue of the defendant's alienage was fully litigated at the former trial and a finding of fact that he was then an alien was made. It was necessary to make such finding in order for a conviction to take place. In the case at bar, it was necessary for the government to prove, at the first trial, that appellant was an alien in order to obtain a conviction for false representation of citizenship.

This court adopts the following reasoning of *Rangel-Perez*:

"[i]f the issue of alienage were to be tried each time a defendant makes an entry into the United States, after once having been found by judicial determination to be an alien, there would be less to deter future entries than at the present. Even though the present risk of prosecution for illegal entry would remain under 8 U.S.C. § 1326, a defendant would have an added incentive to enter again and again, knowing that a trial de novo on the issue of alienage would be forthcoming and that such trial might, on one occasion, result in a favorable verdict[1] * * * and accomplishment of the objectives of the immigration laws to discourage and effectively control the already difficult problem of illegal entries into

1. Omitted from the quotation is the statement, "The Government would be estopped by any unfavorable verdict * * * *". Distinction must be made between the effect of a verdict or finding of guilty in a criminal case as compared with a finding or verdict of not guilty. Where the issue, e. g., alienage, is an element of the offense, then the finding or verdict of guilty determines that the issue was proved. But the finding or verdict of not guilty could rest on any one of many factors, e. g., (1) failure to prove some other essential element of the offense; or (2) failure of proof beyond a reasonable doubt. The Government might not be estopped by an unfavorable verdict.

this country would be weakened * * *

"Of course the defendant is entitled to have tried anew each time the facts as to his entry and its justification on other grounds (see 8 U.S.C.A. § 1326) as well as any change of nationality status since the prior adjudication. And it is equally beyond question that the accused is always entitled to have any prior proceedings carefully examined in order to determine surely whether a prior adjudication of alienage was made after a full and adequate hearing, and was essential to a determination of the case." *Rangel-Perez,* supra, 179 F.Supp. at 626.

■ There is no error in the trial court's ruling.

### SPECIFIC INTENT [2]

The answer to the second question presented depends on whether the government must prove "a specific intent" under 8 U.S.C. Sec. 1326.

The certified copy of the birth certificate offered by appellant was a delayed birth certificate dated November 25, 1959, and based on affidavits made in 1946. It was stipulated that the original of the certificate offered was on record with the New Mexico Department of Public Health. The certificate was the same one considered by the trial court in 1964. Notwithstanding the certificate, that court found the appellant to be an alien.

■■ The fact that a criminal statute omits any mention of intent does not mean that it will necessarily be construed as eliminating that element from the crime denounced. Morissette v. United

States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). But where the peculiar nature and quality of the legislation requires an effective means of regulation, such legislation may dispense with the conventional requirement for criminal conduct, to-wit, awareness of some wrongdoing. Morissette v. United States, supra; United States v. Dotterweich, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943). Therefore where the statute is silent as to intent, it becomes a question of legislative intent to be construed by the court. United States v. Balint, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922); Cohen v. United States, 378 F.2d 751 (9 Cir. 1967).

The power of Congress to control immigration stems from the sovereign authority of the United States as a nation and from the constitutional power of Congress to regulate commerce with foreign nations. Chae Chan Ping v. United States, 130 U.S. 581, 9 S.Ct. 623, 32 L.Ed. 1068 (1889). Such power and authority of the United States, as an attribute of sovereignty, either to prohibit or regulate immigration of aliens, is plenary. Kaorn Yamataya v. Fisher, 189 U.S. 86, 23 S.Ct. 611, 47 L.Ed. 721 (1903). The right to exclude or to expel all aliens or any class of aliens, absolutely or upon certain conditions, is an inherent and inalienable right which is essential to the safety, independence and welfare of every sovereign nation.

The statute in question is not based on any common law crime, but is a regulatory statute enacted to assist in the control of unlawful immigration by aliens. This offense is a typical mala prohibita offense,[3] and since it denounces

---

2. We discuss here "specific intent" and not the general intent to do the act. Even in a crime requiring no specific intent, a defendant may defend upon the ground that he did no voluntary act; that he was asleep or unconscious at the time an act occurred. We refer to this as "general intent" to do or not do the act.

3. In Morissette v. United States, (1952) 342 U.S. 246, 255–256, 72 S.Ct. 240, 246, 96 L.Ed. 288, the court discusses "prosecu-

tions, based on statutes or administrative regulations, for what have been aptly called 'public welfare offenses.' These cases do not fit neatly into any of such accepted classifications of common-law offenses, such as those against the state, the person, property, or public morals. Many of these offenses are not in the nature of positive aggressions or invasions, with which the common law so often dealt, but are in the nature of neglect where the

the doing of an act as criminal, if a defendant voluntarily does the forbidden act, the law implies the intent. United States v. Balint, 258 U.S. 250, 42 S.Ct. 301 (1922).

In construing statutes, words are to be given their natural, plain, ordinary and commonly understood meaning unless it is clear that some other meaning was intended, Malat v. Riddell, 383 U.S. 569, 86 S.Ct. 1030, 16 L.Ed.2d 102 (1966); and where Congress has carefully employed a term in one place and excluded it in another, it should not be implied where excluded. City of Burbank v. General Electric Company, 329 F.2d 825 (9 Cir. 1964).

■ The statute, 8 U.S.C. Sec. 1326, makes "any alien who has been arrested and deported" and who "thereafter enters" or is "at any time found in the United States" guilty of a felony. There is no language on intent. The government need only prove that the accused is an alien and that he illegally entered the United States after being deported according to law. United States v. Bowles, 331 F.2d 742, 750 (3 Cir. 1964). An allegation of wilfulness is unnecessary in an indictment under 8 U.S.C. Sec. 1326. United States v. Trott, 227 F.Supp. 448, 449 (D.C.Md.1964). As was said in United States v. Alvarado-Soto, 120 F. Supp. 848 (S.D.Cal.1954), the presence in the country itself is the conduct which Congress has seen fit to punish.

The legislative history of the Immigration and Nationality Act, covered in the 1952 U. S. Code Cong. and Adm. News, p. 1653, appears to be barren as to whether Congress meant to include language inferring "intent" in Section 276 of the Act, 8 U.S.C. Sec. 1326. However, such language is used in the following sections of the Act as found in Title 8: §§ 1287, 1306, 1324, 1325, 1327 and 1328.[4]

law requires care, or inaction where it imposes a duty. Many violations of such regulations result in no direct or immediate injury to person or property but merely create the danger or probability of it which the laws seeks to minimize. While such offenses do not threaten the security of the state in the manner of treason, they may be regarded as offenses against its authority, for their occurrence impairs the efficiency of controls deemed essential to the social order as presently constituted. In this respect, whatever the intent of the violator, the injury is the same, and the consequences are injurious or not according to fortuity. Hence, legislation applicable to such offenses, as a matter of policy, does not specify intent as a necessary element."

4. Sections requiring a specific intent: (Title 8, U.S.C.).

§ 1287: "Any person * * * who shall knowingly sign on the vessel's articles * * * any alien, with intent to permit or assist such alien to enter * * * the United States * * *."

§ 1306: "(a) Any alien * * * who wilfully fails * * *" to register shall be guilty of a misdemeanor. "(d) Any person who with unlawful intent photographs, prints * * * any certificate of alien registration * * *" is guilty of a felony.

§ 1324: "Any person * * * who (1) brings into * * * the United States * * *; (2) knowing that he is in the United States in violation of law * * *; (3) willfully [sic] or knowingly conceals, harbors * * *; or (4) willfully [sic] or knowingly encourages or induces * * * the entry into the United States of any alien * * * not duly admitted * * * shall be guilty of a felony * * *."

§ 1325: "Any alien who * * * (3) obtains entry to the United States by a willfully [sic] false or misleading representation, or the willful [sic] concealment of a material fact, shall * * * be guilty of a misdemeanor * * *."

§ 1327: "Any person who knowingly aids or assists any alien excludable under * * * this title to enter the United States, or who * * * conspires * * * to allow * * * such alien to enter the United States, shall be guilty of a felony * * *."

§ 1328: "* * * * whoever shall * * * import * * * into the United States any alien for the purpose

The Immigration and Nationality Act represents the final product of a most intensive and searching investigation and study over a three year period. See 1952 U. S. Code Cong. and Adm. News, p. 1678. It would be absurd for this court to think that Congress inadvertently left "intent" out of Section 1326.

■ Since Congress used no words bearing on specific intent, such an element is not part of the statute or of the government's burden of proof. Put differently, the government need not prove that appellant knew he was not entitled to enter the country without the permission of the Attorney General. Hence the refusal to admit into evidence the affidavit, bearing on appellant's purported place of birth, was not error.

### General intent—Voluntary act

There still must be the general intent to do the prohibited act, to-wit enter. Obviously if appellant was drugged and carried across the line, he would not be guilty of the offense, although nevertheless subject to deportation. The indictment alleges he " * * * knowingly and wilfully entered the United States * * * ", thus negating an involuntary act and alleging the general intent to enter. There is no real dispute as to this issue. Appellant does not contend that he entered involuntarily. In any event the jury found against the appellant on this issue.

The judgement of conviction is affirmed.

of prostitution * * * shall * * * be guilty of a felony."

We note that Sections 1287, 1306(d), 1324 and 1327, refer to "any person," and Section 1328 to "whoever," in the charging portions.

Only Section 1306(a) and Section 1325 (3) refer to "any alien."

*Sections not requiring specific intent.*

Sections having no language concerning specific intent include; 1306(b), Failure to give notice to the Attorney General as required in Section 1305; 1306(c), Filing a false application; 1321, Prevention of unauthorized landing of aliens; 1322, Bringing in aliens subject to disability or afflicted with disease; 1323, Unlawful bringing of aliens into the United States; 1326, Reentry of deported aliens.

---

A study of the sections indicates the choice of language by Congress was deliberate.