Jeff Soun HOWARD a/k/a Mohamed Kandiel, Petitioner,

v.

IMMIGRATION AND NATURALIZA-TION SERVICE, Respondent.

No. 90–4423
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

May 2, 1991.

Jeff Soun Howard, pro se.

Robert L. Bombough, Civ. Div., Washington, D.C., John Volz, U.S. Atty., John B.Z. Caplinger, Dist. Dir., I.N.S., New Orleans, La., Alice M. King, Robert L. Bombough, Civ. Div., Dept. of Justice, Washington, D.C., for respondent.

Petition for Review of an Order of the Board of Immigration Appeals.

Before JOHNSON, SMITH, and WIENER, Circuit Judges.

PER CURIAM:

This circuit reviews for the first time the issue whether the finding of alienage in a prior criminal case collaterally estops the alien from relitigating the issue of his citizenship in a later administrative proceeding. Jeff Soun Howard a/k/a Mohamed Ibrahim Kandiel (Kandiel) petitions for review of an order of the Board of Immigration Appeals (BIA) upholding an order of deportation entered by the immigration judge. Because we find that Kandiel is estopped from challenging a finding of alienage in his earlier criminal conviction and that the other grounds which he raises for review lack merit, we affirm the decision of the BIA.

I

BACKGROUND

On June 25, 1987, a jury convicted Kandiel of various firearms violations, 18 U.S.C. § 922(g)(5), 26 U.S.C. § 5861, 18 U.S.C.App. § 1202(a)(5); of making false statements in applications for passports, 18 U.S.C. § 1542; of making a false representation of citizenship in enlisting in the United States Army, 18 U.S.C. § 911; and of making false statements in applications for federal firearms dealer and import licenses, 18 U.S.C. § 924(a). The Court of Appeals for the Eighth Circuit affirmed the judgment of conviction in an opinion dated January 23, 1989, *United States v. Kandiel*, 865 F.2d 967 (8th Cir.1989).

On August 3, 1989, the Immigration and Naturalization Service (INS) issued an Order to Show Cause (OSC) why Kandiel should not be deported. The OSC alleged that Kandiel was a native and citizen of Egypt who had entered the United States

illegally and had been convicted of possessing and transferring firearms and of making false statements. The OSC charged that Kandiel was deportable under the Immigration and Nationality Act (INA) section 241(a)(1), 8 U.S.C. § 1251(a)(1), for having entered the United States without valid entry documents; under section 241(a)(4), 8 U.S.C. § 1251(a)(4), for having been convicted of two crimes involving moral turpitude (making false representations in a passport application and on a Bureau of Alcohol, Tobacco and Firearms (ATF) Form); and under section 241(a)(14), 8 U.S.C. § 1251(a)(14), for possessing or carrying an automatic or semi-automatic weapon.

The immigration judge granted Kandiel six continuances of the hearing on the OCS. The hearing finally concluded on November 29, 1989, when the judge found that the evidence was "clear, convincing, and unequivocal" that Kandiel was deportable under sections 241(a)(1), (4), and (14). The judge determined that Kandiel is not a citizen or national of the United States and that he is a native and citizen of Egypt.

Kandiel appealed the immigration judge's decision to the BIA on December 6, 1989. The BIA upheld the immigration judge's order and dismissed the appeal on June 4, 1990. Kandiel timely filed a petition for review on June 13, 1990.

Kandiel now contends that the BIA cannot rely, in establishing grounds for deportability, on his criminal convictions having proved his alienage. He also contends that the immigration judge abused his discretion in denying further continuances and that Kandiel's indictment under 18 U.S.C. § 911 during deportation proceedings prejudiced the outcome of his case and denied him due process.

## II

### STANDARD OF REVIEW

Section 106 of the INA, 8 U.S.C. § 1105a, details the exclusive procedure for judicial review of all final orders of deportation. The scope of judicial review is narrowly restricted. This court must affirm the decision of the BIA if it has made no error in law and if reasonable, substantial, and probative evidence on the record considered as a whole supports its factual findings. 8 U.S.C. § 1105a(a)(4); *Chavez–Ramirez v. Immigration & Naturalization Service*, 792 F.2d 932 (9th Cir.1986). For the BIA to have declared an alien deportable, the government must have demonstrated by clear and convincing evidence that the alien has no lawful right to remain in this country. *Woodby v. Immigration & Naturalization Service*, 385 U.S. 276, 285–86, 87 S.Ct. 483, 487–88, 17 L.Ed.2d 362 (1966).

## III

### ANALYSIS

*Use of Prior Criminal Convictions to Establish Alienage*

The BIA found that Kandiel was collaterally estopped from relitigating the issue of alienage in his deportation proceedings. That issue, stated the Board, had been an essential element of the charges against Kandiel in his criminal trial, and both the district court and the court of appeals had "found sufficient evidence to conclude" that Kandiel was an alien.

"[A] prior criminal conviction," the Supreme Court has stated, "may work an estoppel in favor of the Government in a subsequent civil proceeding." *Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 568, 71 S.Ct. 408, 414, 95 L.Ed. 534 (1951).

> Such estoppel extends only to questions "distinctly put in issue and directly determined" in the criminal prosecution.... In the case of a criminal conviction based on a jury verdict of guilty, issues which were essential to the verdict must be regarded as having been determined by the judgment.... [P]laintiffs are entitled to introduce the prior judgment to establish prima facie all matters of fact and law necessarily decided by the conviction and the verdict on which it was based.

*Id.* at 569, 71 S.Ct. at 414 (citations omitted); *accord Brazzell v. Adams*, 493 F.2d

489, 490 (5th Cir.1974) ("The general principle of collateral estoppel is that 'a fact decided in an earlier suit is conclusively established between ... the parties and their privies, provided it was necessary to the result in the first suit.' ").

When the issue of a defendant's alienage was necessarily fully litigated in a criminal case, courts have applied the doctrine of collateral estoppel to the issue in a later criminal case. *Pena–Cabanillas v. United States*, 394 F.2d 785, 787 (9th Cir.1968) (finding of fact that defendant is alien necessary for prior conviction of violation of 18 U.S.C. § 911—falsely and willfully representing himself to be citizen of United States). A defendant's pleading guilty in an earlier case to a violation of 8 U.S.C. § 1326—unlawfully re-entering the United States after deportation—entitled the district court in a later criminal case to invoke the doctrine on the issue of the defendant's alienage, a judicial determination of which, it declared, had previously occurred. *Hernandez–Uribe v. United States*, 515 F.2d 20, 21 (8th Cir.1975), *cert. denied*, 423 U.S. 1057, 96 S.Ct. 791, 46 L.Ed.2d 647 (1976).

 We must determine, however, whether a finding of alienage in a criminal case triggers the doctrine of collateral estoppel not in a later criminal case but in administrative—deportation—proceedings. As the INS correctly points out, this circuit has declared that a criminal conviction supplies "a valid basis for deportation." *Zinnanti v. Immigration & Naturalization Service*, 651 F.2d 420, 421 (5th Cir. Unit A July 1981); *see also Brown v. United States Immigration & Naturalization Service*, 856 F.2d 728, 731 (5th Cir.1988) (deportation based on Wisconsin felony convictions). A finding of alienage when it is essential to the conviction, when it is a hinge upon which the verdict turns, may, consequently, be introduced as evidence to support a finding of deportability. *See Pena–Cabanillas*, 394 F.2d at 787 n. 1 (when issue of alienage is element of offense, verdict of guilty determines issue was proved). A finding of alienage in a prior case, therefore, collaterally estops that issue up to the date of the conviction. In Kandiel's case the Eighth Circuit later considered his alienage. *Kandiel*, 865 F.2d at 969 (issue of Kandiel's alienage critical at trial and remains so on appeal). Consequently, its affirming the judgment of conviction operates as collateral estoppel against Kandiel up to the date, January 23, 1989, when the court affirmed the judgment.

 The record of his convictions reveals that the jury found Kandiel guilty of violations for which a finding of alienage was necessary in order for the jury to convict him. *See, e.g., Pena–Cabanillas*, 394 F.2d at 787 (finding of fact that defendant is alien necessary in order to obtain conviction for false representation of citizenship). Alienage was an essential element of the charges that Kandiel falsely and willfully represented that he was a United States citizen; that being an alien unlawfully and illegally in the United States he possessed a firearm; and that on an application for a federal license to be a dealer of firearms he falsely stated that he was not an alien unlawfully in the United States.[1]

Kandiel now wants this court to examine evidence that he is not the Egyptian native and citizen Mohamed Ibrahim Kandiel which the United States and the INS assert that he is and which the convictions established.[2] In seeking to introduce this evidence, Kandiel is collaterally attacking his criminal convictions. But he cannot do so in deportation proceedings. *Zinnanti*, 651 F.2d at 421. "Immigration authorities must look solely to the judicial record of final conviction and may not make their

---

1. In all but the first of these charges, "illegally and unlawfully" in the United States is also an essential element.

2. Kandiel offers the death certificate of a Mohamed Nagy Ibrahim Ali Kandiel (which the immigration judge admitted); a letter dated August 24, 1990, from the Egyptian Consul General in Houston which states that the "Egyptian citizen, Mr. Mohamed Ali Kandiel passed away in 1984, therefore the allegation that this person detained in the state of Louisiana is not the same person" [sic]; and an affidavit from Ahmed Kamal Ibrahim Ali Kandiel in which he recants his testimony during Kandiel's criminal trial that he was Kandiel's brother.

own independent assessment of the validity of [petitioner's conviction]." *Id.; see also Trench v. Immigration & Naturalization Service*, 783 F.2d 181, 184 (10th Cir.), *cert. denied*, 479 U.S. 961, 107 S.Ct. 457, 93 L.Ed.2d 403 (1986). Consequently, because Kandiel's convictions established his status as an alien and because he has not offered any proof that his status has changed since January 23, 1989, we hold that the issue of his alienage is collaterally estopped in his deportation proceedings.[3] His convictions provide a valid basis for deportation.

## Continuances

Kandiel contends that the immigration judge abused his discretion and prejudiced Kandiel's case by refusing to grant a continuance of the November 3, 1989 hearing. More specifically, Kandiel argues that the refusal to grant a further continuance deprived him of the opportunity specifically to present a letter from the Egyptian Consulate and a death certificate bearing the same name as the INS alleges he bears.[4]

■ This court has held that "[t]he grant of a continuance rests in the sound discretion of the immigration judge, who may grant an adjournment of a deportation hearing only for 'good cause.'" *Patel v. United States Immigration & Naturalization Service*, 803 F.2d 804, 806 (5th Cir. 1986) (citing 8 C.F.R. § 242.13). No good cause existed which merited granting the further continuance that Kandiel sought.

■ Before November 3, 1989, the immigration judge had granted Kandiel four continuances. On November 3rd, the judge ultimately granted the continuance that Kandiel had sought. Initially, however, the judge had denied the continuance because Kandiel had not specified what documents he had been awaiting and how they were relevant. The judge, had, nevertheless, granted Kandiel leave to renew his motion for continuance after the INS presented its case if Kandiel needed more

time to rebut that case. After the INS evidence was admitted, the immigration judge did, in fact, grant Kandiel a continuance until November 21, 1989. Because Kandiel was ill on the 21st, the immigration judge granted a further continuance of the hearing until November 29, 1989. As Kandiel did not seek a continuance on that date, the hearing finally concluded.

Kandiel received the continuance he sought on November 3rd. The record does not indicate that after November 21st Kandiel sought and was denied continuances. Further, contrary to Kandiel's assertion, the immigration judge did admit into evidence the death certificate for the arrival of which Kandiel had sought a continuance. Finally, Kandiel cannot use the letter from the Egyptian Consulate in deportation proceedings to attack collaterally his conviction. Consequently, Kandiel's contention that the immigration judge abused his discretion is meritless.

## Indictment during Deportation Proceedings

■ Finally, Kandiel argues that he was denied due process because he was indicted under section 911 of Title 18 of the United States Code during the period when his deportation proceedings were being conducted. The indictment, he claims, hampered his ability to present his case against deportation, thereby denying him due process and a fair hearing. Kandiel claims that he did not answer questions during his hearing in order not to incriminate himself.

The government violates procedural due process "only if [its] actions substantially prejudice the complaining party." *Calderon–Ontiveros v. Immigration & Naturalization Service*, 809 F.2d 1050, 1052 (5th Cir.1986) (citing *Ka Fung Chan v. Immigration & Naturalization Service*, 634 F.2d 248, 258 (5th Cir. Jan. 1981). No such substantial prejudice occurred here. The immigration judge deemed Kandiel's refusal to plead to the allegations of the OSC as

---

**3.** Because Kandiel is collaterally estopped from relitigating the issue of his alienage and because, therefore, no genuine issue of material fact concerning his nationality exists, we reject his contention that, pursuant to section 106(a)(5)(B) of the INA, 8 U.S.C.

§ 1105a(a)(5)(B), we should transfer the proceedings to district court for a hearing de novo on his nationality claim.

**4.** See footnote 2 above.

denials, not admissions. From Kandiel's silence, he could lawfully have drawn adverse inferences. *Immigration & Naturalization Service v. Lopez–Mendoza,* 468 U.S. 1032, 1043–44, 104 S.Ct. 3479, 3485–86, 82 L.Ed.2d 778, 789 (1984).

■ The INS showed, as required, identity and alienage by introducing the record of Kandiel's criminal convictions; the burden then shifted to Kandiel to prove time, place and manner of entry. *Lopez–Mendoza,* 468 U.S. at 1039, 104 S.Ct. at 3483, 82 L.Ed.2d at 786; *see* 8 U.S.C. § 1361. Kandiel cannot use his decision not to avail of that opportunity as a palladium against an otherwise valid deportation order.

Even had the indictment not been brought and had Kandiel testified, the outcome would not have differed. His record of convictions indicates that the indictment did not prejudice him. It established his alienage and his unlawful presence in the United States. He cannot in deportation proceedings collaterally attack those facts which his convictions established.

### IV

### CONCLUSION

Kandiel's convictions operate as collateral estoppel against his raising the issue of his alienage in deportation proceedings. His contentions that the immigration judge abused his discretion in denying him a continuance and that his indictment deprived him of the opportunity for a fair hearing are both meritless. Consequently the BIA's order is AFFIRMED.