31 A.3d 476

STATE of Maryland

v.

Jeffrey Edward ALLEN.

No. 76, Sept. Term, 2010.

Court of Appeals of Maryland.

Oct. 28, 2011.

Robert Taylor, Jr., Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for petitioner/cross–respondent.

Allison Pierce Brasseaux, Asst. Public Defender (Paul B. DeWolfe, Public Defender, Baltimore, MD), on brief, for respondent/cross-petitioner.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, *MURPHY, ADKINS, and BARBERA, JJ.

BARBERA, J.

■ A defendant in a criminal proceeding may invoke the doctrine of collateral estoppel to preclude the State from trying an ultimate fact found in favor of the defendant at a prior trial. *Ashe v. Swenson*, 397 U.S. 436, 445, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). This defensive use of collateral estoppel derives from the protection provided a criminal defendant under the Double Jeopardy Clause of the Fifth Amendment. *Id.* We are asked in the case at bar to consider whether collateral estoppel may be applied *against* a criminal defendant to foreclose the jury from finding for itself all of the ultimate facts that make out the charged crime. For the reasons that follow, we hold that offensive collateral estoppel at a criminal trial is inimical to the Sixth Amendment's guarantee of a jury trial "[i]n all criminal prosecutions." U.S. Const. amend. VI.

---

* Murphy, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

## I.

Respondent, Jeffrey Edward Allen, twice has been tried and convicted on charges related to the robbery and murder of John Butler. For purposes of this opinion, it is unnecessary to recite in full the facts underlying the crimes, as they are well detailed in the appeal from the first trial. *See State v. Allen*, 387 Md. 389, 391–93, 875 A.2d 724, 725–26 (2005), *aff'g Allen v. State*, 158 Md.App. 194, 857 A.2d 101 (2004) (herein *"Allen I"*). In brief, the State's evidence established that the crimes, which occurred in October 2001, followed a liaison between the two men at the home of Butler. Respondent demanded that Butler drive him home. Butler refused, so Respondent took hold of Butler's car keys, jingled them, and threatened to drive himself home. A scuffle ensued, during which Respondent repeatedly stabbed Butler with at least one kitchen knife. Respondent then freed himself from the scuffle, grabbed the car keys, and drove away. A few hours later, after crashing the vehicle, Respondent contacted police about the incident and was taken into custody.

Respondent was indicted and later tried before a jury in the Circuit Court for Charles County on charges of first degree premeditated murder, first degree felony murder, second degree (specific-intent) murder, robbery with a deadly weapon and related offenses. The jury found Respondent guilty of first degree felony murder, second degree murder, robbery with a deadly weapon, and lesser related charges.

On appeal to the Court of Special Appeals Respondent argued, among other issues, that the trial court erred in instructing the jury that it could find him guilty of felony murder regardless of whether the intent to rob was formed before or after the murder.[1] *Allen I*, 158 Md.App. at 237, 857

---

1. The trial court gave the following instruction to the jury on the crimes of first degree felony murder and robbery:

> There is a statute meaning an enactment of the legislature which says that if you cause or if a murder is caused by your involvement in the commission of any of a list of felonies then that is first degree

**212**

A.2d at 126. The Court of Special Appeals held that "an 'afterthought' robbery cannot constitute an 'aggravating circumstance' for imposition of the death penalty," and therefore "it [could not] support a conviction for felony murder." *Id.* at 246, 857 A.2d at 132. Consequently, "the [trial court] erred by instructing the jury that appellant could be found guilty of felony murder 'even if the intent to steal here was not formed until after the victim had died.'" *Id.* at 246, 857 A.2d at 132.

Respondent also raised before the Court of Special Appeals the legal sufficiency of the evidence supporting the robbery charge and, by implication, the felony murder charge. Respondent argued that "[t]here [was] absolutely no evidence on the record from which a rational trier of fact could have found

---

murder regardless of what your intention was, regardless of whether you were the individual whose act caused the death, period.

Regardless of what you intended other than in connection with the commission of that felony. Suffice it to say for our purposes in this case robbery is one of the felonies on that list. To convict the defendant of first degree felony-murder in this case, the State must prove that the defendant committed robbery, that his project involv[ing] the robbery [sic] resulted in the killing of John Butler, it is abbreviated here but the principle applies regardless of how many people are involved, and lastly that the act resulted in death. That is what I was talking about a second ago occurred during the commission of that robbery.

As I said also felony-murder does not require the State to prove that the defendant intended the victim's death. On[ly] that it resulted from the robbery project.

Okay. Let's talk about robbery, . . . Robbery is the taking of personal property from another person or from his presence and his control by force or the threat of force, with intent to steal the property.

The elements are pretty simple and straightforward. To convict someone of robbery the Government must prove that the defendant in this case took the car and keys from [the victim] or from his presence and control and they have to prove that he did so by force or the threat of force and that in doing so he intended to steal the property, that is to deprive [the victim] of the property. . . . That they intended to deprive him of the property. . . . Acts inconsistent with the other person's right to own or possess.

*Because there was a death here we throw in the additional language . . . even if the intent to steal here was not formed until after the victim had died taking his property thereafter would still be robbery, if it was part and parcel of the same occurrence which involved the death.* State v. Allen, 387 Md. 389, 393–94, 875 A.2d 724, 727 (emphasis in original).

that [Respondent] ever possessed the intent to deprive [the victim] of his property." *Id.* at 248, 857 A.2d at 133. The Court of Special Appeals, concluding that "a rational jury could readily conclude that [the necessary] intent was formed before the murder," *id.* at 249, 857 A.2d at 134, held that the evidence "was more than sufficient to support [Respondent]'s conviction for first degree felony murder with robbery as the predicate felony," *id.*, 857 A.2d at 133. The Court of Special Appeals consequently affirmed all but the felony murder conviction, which the court vacated because, given the trial court's instruction to the jury, there was "no way of knowing whether the jury unanimously agreed that [Respondent] formed the intent to rob prior to or while in the commission of the murder[.]" *Id.* at 246, 857 A.2d at 132.

We granted the State's petition for a writ of certiorari to review the judgment of the Court of Special Appeals that Respondent was entitled to a new trial based on the challenged jury instruction. We affirmed the holding of the Court of Special Appeals that the instruction was wrong as a matter of law, and we agreed with that court that Respondent was entitled to a new trial on the charge of felony murder. *Allen I*, 387 Md. at 405, 875 A.2d at 734.

### *The retrial and present appeal*

Respondent's three-day retrial on the felony murder charge commenced with jury selection on August 11, 2008. During voir dire, the trial court informed the venire of the following:

Ladies and gentlemen, you—will hear evidence during the course—or the people who try the case will hear evidence that the [the Respondent] was previously convicted for the offense of Second Degree Murder and Robbery in connection with the incident—that is the subject of today's trial.

That in part is why or primarily is the reason why the only matter before the jury in this case—before the Court in today's case or today's trial, will be the First Degree Murder trial—charge related to the robbery incident.

The jury is going to be instructed to—consider the evidence that pertains to the First Degree Felony Murder

Charge only. Is there any potential juror who feels you will have difficulty—with the case because of the fact that you know in advance the [Respondent] has been previously convicted of offenses arising out of the incident?

One prospective juror responded that he was not sure he could be fair in deciding the case because he did not "believe that [the Respondent] should be recharged for something he already got sentence[d] for." The court excused that prospective juror.

During its case in chief, the State presented the testimony of a number of witnesses concerning the events underlying the robbery. The State also read into the record a transcript of Respondent's oral and written statements to the police and his testimony from the first trial, in each of which Respondent gave essentially the same accounts of the acts in question. Respondent's defense case consisted only of his offering into evidence a photograph of the two knives found in the immediate vicinity of the murder victim's body.

The trial court and counsel discussed how the jury should be instructed on the felony murder charge. The court agreed to Respondent's request that the jury be instructed that he had been convicted of second degree murder. The court added, though, that the jury should also be informed of the procedural history of the case, including that Respondent had been convicted of robbery. The court reasoned that, without the additional information about the robbery conviction and the procedural history that necessitated the retrial, the jury would wonder why the felony murder charge was being layered atop a second degree murder conviction. Over Respondent's objection, the trial court instructed the jury:

The primary charge . . . or, the charge that is before you . . . the only charge that is before you, again, is this notion of felony murder . . . first degree felony murder, to distinguish it from another kind of felony murder. . . . In order to convict [the Respondent] of first degree felony murder, in the context of robbery or robbery with a deadly weapon, the State must prove, (1) that the [Respondent] committed a

robbery; (2) that the [Respondent] killed [the victim]; (3) that he had the intent to commit the robbery before or at the time of committing the act that caused [the victim]'s death, and that the act which resulted in [the victim]'s death occurred during the course of and in furtherance of the objective of committing the robbery.

* * *

Let's talk about what robbery is and I'm going to tell you what second degree murder, for purposes of this case, is. I'm going to have a little more discussion about procedure.

* * *

Robbery or robbery with a deadly weapon, if a deadly weapon is involved, is the taking and carrying away of property from another person by force or the threat of force with the intent to deprive the victim of the property. To convict someone of robbery, in other words, the State would have to prove: (1) that the [Respondent] took property from [the victim]'s possession and control; (2) that he took the property by force or threat of force; and (3) that he intended to deprive [the victim] of that property.

Okay. The elements of the offense of second degree murder, for which [Respondent] here stands convicted, are as follows: the second degree murder is the killing of another person with either the intent to kill, or the intent to inflict such serious bodily harm that death would be the likely result. Second degree murder does not require pre-meditation or deliberation. In order to convict someone of second degree murder, the State would have to prove, (1) that the [Respondent]'s conduct caused [the victim]'s death; that he engaged in deadly conduct either with intent to kill [the victim], or with intent to inflict such serious bodily harm that death would be likely to result; and lastly that there were no mitigating circumstances.

* * *

*I'm going to tell you also, over at least one party's objection, the [Respondent] here stands convicted of the underlying robbery.*

\* \* \*

*The question of whether [Respondent] committed second degree murder is not before you. The question of whether he committed robbery or robbery with a deadly weapon is not before you. The only question before you is whether the sequence of events and the interrelationship of the events amounted to first degree felony murder as I just described it.*

(Emphasis added.)

Both the State and Respondent excepted to the instruction, as both were concerned that the jury would wonder why it was called to judge a crime that, seemingly, had been judged by a prior jury. In an attempt to clarify this potential confusion, the trial court delivered an extra word of caution to the jury, to which Respondent's counsel excepted:

Ladies and gentlemen, I give you this admonition in an abundance of caution. You know that there had been prior proceedings in connection with this case. There's an exhibit in here, the one that was read this morning, from a prior proceeding. You're ... you are cautioned to consider the evidence that has been presented to you. And, you are asked and you are instructed not to speculate as to how the case got here today, what its procedural history is. We have told you that the question of whether a robbery occurred is not before you. The question of whether murder in the second degree variety occurred is not before you. The only question is whether the circumstances and the proof or the circumstances as proven amounted to first degree felony murder as we have defined that.

The jury retired to its deliberations, which concluded with its returning a verdict finding Respondent guilty of first degree felony murder.

Respondent argued on appeal to the Court of Special Appeals that the trial court erred when it informed the prospec-

tive jurors about the prior murder and robbery convictions and, in its final instructions, told the jury not to consider those two convictions and the "only question before you [the jury] is whether the sequence of events and the interrelationship of the events amounted to first degree felony murder as I just described it." Respondent contended that the court's instructions amounted to the use of collateral estoppel against him. He specified that the instructions directed the jury to assume, rather than decide for itself, the existence of the ultimate facts that made out the actus reus of the crime of felony murder, and thereby deprived him of his Sixth Amendment right to a jury trial. *Allen v. State*, 192 Md.App. 625, 638, 995 A.2d 1013, 1021 (2010) (herein *"Allen II "*). The Court of Special Appeals agreed with Respondent and reversed the felony murder conviction, with the direction that the case be remanded for a new trial. *Id.* at 638, 995 A.2d at 1021.

The State filed a petition for writ of certiorari, which we granted to answer a single question that we have recast, as follows: [2]

> May the doctrine of collateral estoppel be employed at a criminal trial by instructing the jury at a retrial on a charge of felony murder that the defendant has been convicted of murdering and robbing the victim, and the jury need only decide when the defendant formed the intent to rob the victim?

For the following reasons, we answer "no" to that question.

## II.

■ " 'Collateral estoppel' is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397

---

**2.** The State's question reads: "Were the affirmed findings of fact and law in Allen's first trial entitled to evidentiary weight in his retrial on the remaining issue?"

U.S. at 443, 90 S.Ct. 1189. The question before the Court in *Ashe* was whether the doctrine of collateral estoppel, born in civil litigation[3] yet also a long-established rule of federal criminal law, *see id.,* is also "a part of the Fifth Amendment's guarantee against double jeopardy," *id.* at 442, 90 S.Ct. 1189. The Court, reasoning that defensive collateral estoppel and the Double Jeopardy Clause had the same purpose, "protect[ing] a man who has been acquitted from having to 'run the gantlet' a second time," *id.* at 446, 90 S.Ct. 1189 (citation omitted), held that the defensive use of collateral estoppel is a constitutional requirement of the Double Jeopardy Clause, *id.* at 445–46, 90 S.Ct. 1189. "Much like the Supreme Court has done in recognizing collateral estoppel as a form of constitutionally based double jeopardy, we recognize the collateral estoppel form of double jeopardy as a part of Maryland common law." *Odum v. State,* 412 Md. 593, 606, 989 A.2d 232, 240 (2010); *accord Butler v. State,* 335 Md. 238, 253, 643 A.2d 389, 396 (1994) (stating that, "[a]lthough collateral estoppel is usually invoked based upon a prior acquittal, the critical consideration is whether an issue of ultimate fact has been previously determined in favor of the defendant" (internal citations omitted)).

The question we must answer here is whether the collateral estoppel doctrine can be employed in a criminal case not just as a shield that protects the defendant from having litigated against him an ultimate fact found in his favor, but also as a sword that relieves the State of the burden to re-prove an ultimate fact previously found against the defendant. The State asserts that collateral estoppel can be invoked against the defendant, much as in civil law, *see supra* note 3. The State reasons that there is no constitutional or common law

---

3. Maryland, too, has long recognized the use of the doctrine in civil cases. *See Sellman v. Bowen,* 8 G & J 50 (1836). As applied in the civil context, the doctrine is two-sided; that is, it may be "defensive," where a defendant uses a previously determined issue as a shield against liability, or "offensive," where a plaintiff uses a previously determined issue as a sword to establish liability. *See Rourke v. Amchem Prods., Inc.,* 384 Md. 329, 341, 863 A.2d 926, 933 (2004).

bar to application of collateral estoppel to foreclose re-litigation of ultimate facts previously found against a criminal defendant. The State adds that the same policy reasons that underlay the doctrine in the civil arena apply in criminal cases: judicial economy, and more importantly, finality of judgments. Respondent counters that application of collateral estoppel against a defendant in a criminal case interferes with the responsibility of the jury to determine every element of the crime, thereby impinging upon the defendant's constitutional right to a jury trial.

Although we have not yet had occasion to address this question, we are not without guidance on the subject from our sister federal and state appellate courts. We begin our analysis with a discussion of those cases.

## III.

The overwhelming majority of federal and state courts that have addressed the question have held that collateral estoppel may not be used against a criminal defendant. Two of those cases are particularly worthy of extended discussion, *United States v. Pelullo*, 14 F.3d 881 (3rd Cir.1994), and *State v. Ingenito*, 87 N.J. 204, 432 A.2d 912 (1981). Both are grounded on the Sixth Amendment guarantee of a trial by an impartial jury, and one or the other is often cited with approval by other courts.[4] It is appropriate to begin with *Ingenito*, upon which

---

**4.** Other cases cite with approval the Sixth Amendment reasoning, but are ultimately decided on either state constitutional grounds or a different analysis altogether. *See United States v. Smith–Baltiher*, 424 F.3d 913, 920 (9th Cir.2005) (citing the *Pelullo* decision, but ultimately basing its holding on the government's in-brief concession from *United States v. Arnett*, 353 F.3d 765, 766 (9th Cir.2003) (en banc), that collateral estoppel may not be used in a criminal trial to establish an element of an offense as a matter of law); *United States v. Gallardo–Mendez*, 150 F.3d 1240 (10th Cir.1998) (discussing with approval the Sixth Amendment analysis of the Third Circuit in *Pelullo*, yet barring under the Due Process Clause the practice of affirmative collateral estoppel in that case, which involved use of a prior guilty plea); *State v. Scarbrough*, 181 S.W.3d 650 (Tenn.2005) (discussing, with approval, the Sixth Amendment analysis, but holding that an analogous Tennessee constitutional provision forbids the offensive use of collateral estoppel);

the *Pelullo* court places much reliance in its own analysis of the constitutional issue.

The defendant, Ingenito, was charged with, *inter alia*, the unlicensed transfer of weapons and possession of a firearm by a convicted felon. 432 A.2d at 913. Ingenito was tried separately on the two charges. *Id.* At the first trial, the jury convicted him of the unlicensed transfer of weapons and related offenses. *Id.* At the second trial, for possession of a firearm by a convicted felon, Ingenito stipulated to the fact that he was a convicted felon, leaving only the element of possession for the prosecution to prove. *Id.* The prosecution met that burden by introducing, over Ingenito's objection, "the county clerk's testimony of the record of [the] defendant's recent conviction for the unlicensed transfer of the weapons." *Id.* at 913–14. In its ruling permitting the State to rely on the record of conviction, the trial court pointed out that Ingenito "had ample opportunity to present his case at the earlier trial and that, therefore, concerns of judicial and prosecutorial economy permitted the use of this technique." *Id.* at 914.

Ingenito was convicted of possession of a firearm by a convicted felon and appealed, first to the Appellate Division, which affirmed the conviction, and then to the Supreme Court of New Jersey, which reversed the judgment of the Appellate Division. *Id.* The Supreme Court of New Jersey held that the offensive use of collateral estoppel against a defendant "impinged upon [the] constitutional right of trial by jury." *Id.* at 915.

---

*People v. Goss,* 446 Mich. 587, 521 N.W.2d 312 (1994) (finding, by a plurality, that the doctrine violates the Sixth Amendment's jury mandate).

Two cases forego the Sixth Amendment analysis and simply prohibit use of the doctrine on grounds of judicial economy. *See United States v. Harnage,* 976 F.2d 633 (11th Cir.1992) (disapproving affirmative collateral estoppel in criminal cases because the judicial economy policy underlying the doctrine is outweighed by the difficulty in applying it in a criminal case); *State v. Johnson,* 134 N.H. 498, 594 A.2d 1288 (1991) (holding that, on balance, the judicial economy policy underlying the doctrine does not justify invoking collateral estoppel in that case).

The *Ingenito* court identified several constitutionally-based functions of the jury that would be undermined by allowing the prosecution to invoke collateral estoppel against a criminal defendant. Prime among them is "the nondelegable and nonremovable responsibility of the jury to decide the facts." *Id.* at 915. The court pointed out that it is the jury alone who discharges the entirety of this duty, including evaluation of the credibility of witnesses and the weight to accord evidence. *Id.* (citing, e.g., *Baltimore & C. Line v. Redman,* 295 U.S. 654, 657, 55 S.Ct. 890, 79 L.Ed. 1636 (1935); *Mattox v. United States,* 156 U.S. 237, 242–43, 15 S.Ct. 337, 39 L.Ed. 409 (1895)). Furthermore, the jury in a criminal trial is vested with answering the ultimate question of guilt or innocence and can only arrive at that truth by "consider[ing] solely the evidence adduced in the case before it." *Ingenito,* 432 A.2d at 916 (citing *Taylor v. Kentucky,* 436 U.S. 478, 485, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978)). The court also recognized that "[a] jury failing in an essential duty cannot fulfill the constitutional right to a trial by jury which is guaranteed a criminal defendant." *Id.* (citing *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)). Consequently,

> [i]f an essential element of a case is presented as concluded or settled, effectively withholding from the jury crucial underlying facts, the jury's capacity to discharge fully its paramount deliberative and decisional responsibilities is irretrievably compromised. It follows in such circumstances that the defendant's jury right will have been, commensurately, abridged.

*Id.*

The *Ingenito* court further determined that offensive collateral estoppel impermissibly relieves the State of its burden of proof. The court noted that the Supreme Court "has stated on numerous occasions that '[t]he presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice.'" *Id.* at 917 (alteration in original) (quoting *Estelle v. Williams,* 425 U.S. 501, 503, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976)). That presumption, in turn, is a key component of the requirement

that the prosecution prove every element of a crime beyond a reasonable doubt and is therefore "intertwined" with the Sixth Amendment right to a jury trial. *Id.; see also Sandstrom*, 442 U.S. at 523, 99 S.Ct. 2450 ("a conclusive presumption in this case would conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime, and would invade [the] factfinding function which in a criminal case the law assigns solely to the jury." (internal quotation marks omitted) (alteration in original)). The *Ingenito* court recognized that offensive collateral estoppel in a criminal trial "serves to establish virtually conclusive evidence of a critical element of criminal guilt," *id.* at 919, creating "a strong, perhaps irresistible, gravitational pull towards a guilty verdict," *id.* at 918, that destroys the presumption of innocence, impermissibly shifts the burden of proof from the prosecution to the defendant, and operates in a manner "utterly inconsistent with the requirement that a jury remain free and untrammeled in its deliberations," *id.* at 918–19.

The *Ingenito* court concluded from what we have summarized that:

the right to a jury in a criminal trial ordinarily includes the right to have the *same* trier of the fact decide *all* of the elements of the charged offense. Unless the same jury is permitted to deliberate meaningfully upon all of the issues that are crucial to a verdict of guilt or innocence of the particular crime charged, a defendant will not have secured the jury right contemplated by the Constitution. Collateral estoppel against a defendant in the context of the criminal trial is inconsistent with this proposition.

*Id.* at 919 (footnote omitted).

The Court of Appeals for the Third Circuit likewise held, in *United States v. Pelullo*, 14 F.3d at 892, that the Sixth Amendment right to a jury trial is violated when collateral estoppel is used offensively against the criminal defendant. The defendant, Pelullo, was convicted at trial of 49 counts of wire fraud, and a single count of racketeering. *Id.* at 885. On

appeal, the Third Circuit overturned all but one of the wire fraud convictions. *Id.* However, the one affirmed wire fraud conviction was "alleged to constitute one of the [racketeering] predicate acts." *Id.* at 887. At retrial on the racketeering charge, the Government introduced evidence of the prior conviction to prove the predicate act for the racketeering charge. *Id.* Based on that evidence, the trial judge instructed the jury that, "as a matter of law, the defendant has committed the wire fraud offense described in [the indictment for racketeering]. That means you don't have to consider whether the government has proved this [racketeering] offense." *Id.* The jury convicted Pelullo of the racketeering charge. *Id.* at 885.

The Third Circuit reversed the conviction, holding that the offensive use of collateral estoppel against Pelullo "deprived him of his right to a jury trial." *Id.* at 889. That court relied on the *Ingenito* analysis to support its own conclusion that "collateral estoppel against a defendant in criminal cases violates the defendant's constitutional right to a jury trial." *Id.* at 892.

The *Pelullo* court found further support for its conclusion in the history and language of the Sixth Amendment. The court pointed out that neither the parties in *Pelullo* nor prior courts or academic commentators "have discovered . . . evidence that collateral estoppel was employed against the accused at the time when the Bill of Rights was debated and ratified." *Id.* at 893–94 (citing *Comment, The Use of Collateral Estoppel against the Accused,* 69 Colum. L.Rev. 515, 523 (1969) ("evidence of its use against the accused is . . . ambiguous.") (alteration in original)); Marlyn E. Lugar, *Criminal Law, Double Jeopardy and Res Judicata,* 39 Iowa L.Rev. 317, 319 n. 9 (1954) ("At early common law there was no plea of res judicata in criminal cases."). The *Pelullo* court, therefore, was "forced to conclude that the framers would not have meant to apply collateral estoppel against a criminal defendant." *Id.*

The *Pelullo* court confirmed that interpretation of the Sixth Amendment's jury trial guarantee by examining the language

of the amendment itself, which states in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right to a ... trial, by an impartial jury of the State and district wherein the crime shall have been committed." The court noted that the reference to the right to a jury in "*all* criminal prosecutions," "guarantee[s] a right that is absolute in the sense that it applies to all criminal prosecutions or, put differently, to the prosecution of every crime." 14 F.3d at 895. The court reasoned that, if "[t]he right to a jury trial applies in every and all criminal prosecutions," then "such a right to a jury trial necessitates that every jury impaneled for a prosecution considers evidence of guilt afresh and without the judicial direction attending collateral estoppel." *Id.* at 896 (citing *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)). Moreover, the Sixth Amendment's jury trial right could not yield to "public policy" or reasons of "common sense judicial administration," as had been the rationale for a contrary conclusion by the Court of Appeals for the Ninth Circuit. *Id.* at 891 (quoting *Pena–Cabanillas v. United States,* 394 F.2d 785, 787 (9th Cir.1968)).[5] The Third Circuit concluded: "The right to a jury trial applies in every and all criminal prosecution. We hold that such a right to a jury trial necessitates that every jury impaneled for a prosecution con-

---

**5.** The *Pelullo* court found untenable the policy rationale employed in the pre-*Ashe* decision of the Ninth Circuit in *Pena–Cabanillas v. United States,* 394 F.2d 785, 787 (9th Cir.1968). In *Pena–Cabanillas,* the Ninth Circuit relied on what it termed "wise public policy and common sense judicial administration" as support for that court's approval of offensive collateral estoppel in that case. *Id.* at 787. The *Pelullo* court rejected the reasoning of the *Pena–Cabanillas* court, noting that the only plausible public policy the Ninth Circuit had been able to identify "was the need to stop illegal aliens from attempting to enter this country time after time." 14 F.3d at 891. The *Pelullo* court declined to base its decision on this policy reason, noting first that the underlying policy did not apply to the overwhelming majority of criminal cases. *Id.* at 893. The *Pelullo* court made the additional important observation that "the liberty interest of a criminal defendant takes priority over the usual concerns for efficient judicial administration so often found in civil proceedings." *Id.*

We note that the Ninth Circuit has since disavowed *Pena–Cabanillas.* *See United States v. Arnett,* 353 F.3d 765, 766 (9th Cir.2003) (en banc); *United States v. Smith–Baltiher,* 424 F.3d 913, 920 (9th Cir.2005).

siders evidence of guilt afresh and without the judicial direction attending collateral estoppel." *Id.* at 896.

Stacked against *Ingenito*, *Pelullo*, and the other cases we have noted, *see supra* note 4, stands but one case that endorses offensive collateral estoppel in a criminal trial and has not, since its issuance, been directly overruled: the now 36–year old decision of the Court of Appeals for the Eighth Circuit, *Hernandez–Uribe v. United States*, 515 F.2d 20 (8th Cir.1975). Notably, that court eschewed any discussion of how the Sixth Amendment right to a jury trial could be impaired by the use of collateral estoppel against a criminal defendant.

The defendant, Hernandez–Uribe, was charged with and convicted of unlawfully reentering the boundaries of the United States under 8 U.S.C. § 1326. 515 F.2d at 20–21. Hernandez–Uribe contested only one element of the crime—whether he was an alien—and offered evidence that he was born a natural citizen of the United States. *Id.* at 21. To refute that evidence, the government entered certified copies of two prior convictions that Hernandez–Uribe had received for violating 8 U.S.C. § 1326. *Id.* Based on that evidence, the trial judge instructed the jury that "[t]here has been a judicial determination in litigation ... that on June 6, 1967 defendant was an alien.... The defendant is bound by that determination. Evidence of his status as citizen or alien prior to [that date] is therefore immaterial and you will not consider it." *Id.* Hernandez–Uribe was convicted of the charge and appealed his conviction, arguing that the court's instruction concerning the prior convictions estopped him from litigating an element of the crime in violation of his Sixth Amendment rights to a jury and to confront witnesses. *Id.*

The Court of Appeals for the Eighth Circuit rejected the claim without giving any consideration to the Sixth Amendment issues raised. Instead, the court merely found that "there would be less to deter future entries [into the United States] than at the present," if the courts were to allow fresh prosecutions every time the defendant attempted to subvert 8

U.S.C. § 1326. *Id.* (quoting the since-overruled *Pena–Caban-illas,* 394 F.2d at 787–88) (*see supra,* note 5). Repeated "trial[s] de novo on the issue of alienage," the court explained, would result in subsequent repeated attempts to enter, with the hope that "on one occasion, [one trial would] result in a favorable verdict." *Id.* (quoting *Pena–Cabanillas,* 394 F.2d at 787–88).

We accord no weight to *Hernandez–Uribe.* It is an old case, its holding is narrow, (seemingly grounded solely on a concern about multiple prosecutions of undocumented persons for illegal entry into the United States), and, most important, it contains no analysis of the Sixth Amendment issues present-ed by the case at bar.

### IV.

The right to have a jury decide one's fate is of paramount importance in this country's system of criminal justice. We have said that "[t]he potency of the Sixth Amend-ment right to a fair trial relies on the promise that a defen-dant's fate will be determined by an impartial fact finder who depends *solely on the evidence and argument introduced in open court.*"[6] *Williams v. State,* 394 Md. 98, 106, 904 A.2d 534, 539 (2006) (citation and internal quotation marks omitted) (first alteration in original) (emphasis added). Invocation of offensive collateral estoppel to establish conclusively an ele-ment of a charged crime undermines the jury's power and duty to decide for itself whether the prosecution has proven the existence of facts necessary to establish all elements of the charged crime to a beyond-a-reasonable-doubt standard of proof. Like our sister courts, we conclude that the offensive use of collateral estoppel against the defendant deprives the defendant of a jury that will "discharge fully its paramount deliberative and decisional responsibilities." *Pelullo,* 14 F.3d at 892 (quoting *Ingenito,* 432 A.2d at 916). As a consequence,

---

**6.** Criminal defendants in Maryland have the same right to a jury trial, through Articles 5, 21 and 24 of the Maryland Declaration of Rights. *Boulden v. State,* 414 Md. 284, 293–94, 995 A.2d 268, 273 (2010).

the jury is "irretrievably compromised," and thereby unable to provide the criminal defendant with the constitutional right to a trial by jury.[7] *Id.* (quoting *Ingenito*, 432 A.2d at 916).

We agree with the *Pelullo* court, moreover, that neither judicial economy nor public policy can trump a constitutional mandate. *See Pelullo*, 14 F.3d at 891 (stating that "[s]uch [policy-based] reasoning subordinates the defendant's constitutionally guaranteed right to a jury trial to concerns for efficient judicial administration and judicial perceptions of

---

**7.** Although the Supreme Court has not decided this issue with definitiveness, there are intimations to that effect in *Simpson v. Florida*, 403 U.S. 384, 91 S.Ct. 1801, 29 L.Ed.2d 549 (1971) (per curiam). In that case, the Supreme Court reversed the Florida District Court of Appeal, which had upheld the prosecution's use, in a subsequent trial for an armed robbery at a store, of a jury verdict at a previous trial finding that the defendant was one of the armed robbers. 403 U.S. at 384–86, 91 S.Ct. 1801. In reaching that result, the Court made the following observation:

> The ground upon which the state court resolved [Simpson's] contention is plainly not tenable. Indeed, in *Ashe* itself, we specifically noted that "mutuality" was not an ingredient of the collateral estoppel rule imposed by the Fifth and Fourteenth Amendments upon the States. *Ashe, supra,* [397 U.S.] at 443 [90 S.Ct. 1189]. It is clear that Florida could not have retried [Simpson] a third time on the charge of robbing the store manager simply because it had previously secured a jury verdict of guilty as well as one of acquittal. *And, had the second trial never occurred, the prosecutor could not, while trying the case under review, have laid the first jury verdict before the trial judge and demanded an instruction to the jury that, as a matter of law, [Simpson] was one of the armed robbers in the store that night.* *Id.* (emphasis added).

Several commentators have read *Simpson* as suggesting what we conclude in the present case, that collateral estoppel may not be used against a criminal defendant. *See* Wayne R. LaFave et al., *Criminal Procedure* 848–49 (4th ed.2004) (stating that the "prevailing view" is that collateral estoppel cannot operate against the defendant, and citing *Simpson* for the proposition that "the Supreme Court has assumed that the result in such circumstances is so apparent as not to require extended discussion"); Charles H. Whitebread & Christopher Slobogin, *Criminal Procedure: An Analysis of Cases and Concepts* 880 (4th ed.2000) (posing the question: "[I]f the prosecution in *Ashe* had convicted the defendant in the first trial, could it claim that this verdict showed beyond a reasonable doubt that the defendant was also involved in the robbery of the other five victims?"; answering that question: "Although the technical requirements of collateral estoppel might be

expeditious public policy"). For that reason, we are unpersuaded by the State's policy-based arguments relating to judicial economy and finality of judgments.

 Furthermore, we disagree with the State's contention that the Sixth Amendment's jury trial guarantee was not violated in this case because the robbery and murder elements were decided by "a jury," (i.e. the jury who sat on Respondent's first trial) if not "the jury" that sat on Respondent's second trial. The State's assertion finds no support in the law. When a jury is impaneled, it must discharge all of its constitutional-fact finding duties in order to fulfill the guarantee of the Sixth Amendment. The right to a jury in a criminal trial necessarily includes "the right to have the *same* trier of the fact decide *all* of the elements of the charged offense." *Ingenito,* 432 A.2d at 919 (emphasis in original).

In sum, we join the vast majority of our sister courts in holding that application of collateral estoppel against a criminal defendant impairs the constitutional right to a jury trial.[8]

### V.

 When in the present case the trial court informed the jury that "The question of whether [Respondent] committed second degree murder is not before you," and "The question of whether [he] committed robbery or robbery with a deadly weapon is not before you," the court necessarily informed the jury that those two elements of felony murder were established as a matter of law, and thereby withdrew from the jury any consideration of them. The court's instruction impermissibly estopped litigation on ultimate facts necessary to a finding that Respondent committed the crime charged, there-

---

met in this situation, it might run afoul of the right to jury trial for each offense"; and citing *Simpson* in support).

**8.** In light of our holding that offensive collateral estoppel runs afoul of the Sixth Amendment right to a jury trial, we have no reason to entertain the State's argument that the offensive use of the doctrine does not offend notions of fundamental fairness under the 14th Amendment's Due Process Clause.

by impairing the function of the jury and depriving Respondent of the constitutionally guaranteed right to a trial by jury in all criminal prosecutions. The Court of Special Appeals was correct in so holding and in mandating that Respondent is entitled to a new trial.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; CHARLES COUNTY TO PAY THE COSTS.**